UNITED STATES, Appellant,

v.

Kent Warren MILES, Gunner's Mate
U.S. Navy, Appellee.

No. 39,843.
NCM No. 80 0951.

U. S. Court of Military Appeals.

March 1, 1982.

For Appellant: *Commander T. C. Watson, Jr., JAGC, USN, Lieutenant Commander John C. Vinson, JAGC, USN, Major J. Dewayne Littlejohn, USMC* (on brief).

For Appellee: *Lieutenant Kerry T. Davidson, JAGC, USN* (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

Appellant was tried on August 31, 1979 by a special court-martial military judge sitting alone. In seven specifications he was charged with violating Article 1151, United States Navy Regulations, by wrongful possession and sale of drugs and by their introduction onto the Naval Submarine Base at New London, Connecticut. *See* Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. Pursuant to a pretrial agreement, he pleaded guilty to five specifications; the other two were withdrawn by the Government. The sentence adjudged was a bad-conduct discharge, confinement at hard labor for 5 months, forfeiture of $250 pay per month for 6 months and reduction to pay grade E-1. The convening authority approved the sentence; but, pursuant to the pretrial agreement, he suspended the bad-conduct discharge for one year from the date when it was adjudged and, for a like period, he suspended the confinement in excess of 80 days and the

forfeitures in excess of $100 pay per month for 6 months. Upon the recommendation in his staff judge advocate's review,[1] the supervisory authority, on January 29, 1980, approved and ordered executed the sentence as approved and suspended by the convening authority. The United States Navy Court of Military Review, relying on its precedents,[2] set aside the findings and sentence on the ground that the appellant's guilty plea was improvident. In turn, The Acting Judge Advocate General of the Navy certified to us the following issue (10 M.J. 14):

WHETHER, UNDER THE FACTS AND CIRCUMSTANCES OF THIS CASE, THE NAVY COURT OF MILITARY REVIEW WAS CORRECT AS A MATTER OF LAW IN HOLDING THAT THE ACCUSED'S GUILTY PLEAS WERE IMPROVIDENCED BY THE FAILURE OF THE MILITARY JUDGE TO ASCERTAIN WHETHER HIS PLEAS WERE MADE WITH THE REALIZATION THAT HE WOULD BE SUBJECT TO ADMINISTRATIVE DISCHARGE FOR THE SAME OFFENSES TO WHICH HE PLEADED GUILTY?

### I

On June 3, 1980, the Court of Military Review allowed Miles to file two post-trial affidavits. In his own affidavit he states:

In my mind, the main benefit I was receiving from the pretrial agreement was the suspension of any discharge which the court might award me. I believed this would enable me to stay in the service, provided I displayed good work and behavior after my court-martial. When I entered into the pretrial agreement, I did not know I would be subjected to administrative discharge processing because of the offenses to which I was pleading guilty.

The affidavit also relates that, when Miles was released from confinement on November 5, 1979, he "was told" that he "was being administratively discharged." Thereupon, he "sought counsel" who "at that time explained to me that the processing was mandatory because of the offenses at my court-martial." Subsequently, he "was taken to the administrative discharge board," which recommended his retention in the service. However, he had been "told that this is only a recommendation and Washington may still discharge me from the U.S. Navy." The affidavit concludes, "I strongly desire to remain in the U.S. Navy. Since my court-martial, I have worked hard to show the U.S. Navy I am sincere in my intention to be a useful service member."

The affidavit of Lieutenant Robert White, a Navy judge advocate, attests that on March 28, 1980, an Administrative Discharge Board of Officers sat at the Naval Education and Training Center, Newport, Rhode Island, "for the purpose of making a recommendation as to" the retention or discharge of "Miles who is being processed for administrative discharge by reason of misconduct due to drug abuse." Retention was recommended and the Commander of the Center at Newport concurred in the recommendation.

The opinion of the Court of Military Review states that, contrary to the local board's recommendation, the Chief of Naval Personnel directed Miles' separation from the Navy "with a general discharge for the convenience of the Government," pursuant to the Bureau of Naval Personnel Manual (BUPERSMAN). See para. 3850220. The discharge was issued on August 1, 1980.

### II

■ The pretrial agreement is contained in Appellate Exhibits I and II. We find no reference to administrative discharges either in the former document which contains the general terms and conditions, or in the latter, which specifies the maximum sentence that the convening authority would

---

1. Appellant's trial defense counsel filed no corrections, challenges or comments to the review. See United States v. Goode, 1 M.J. 3 (C.M.A. 1975).

2. United States v. Miller, 7 M.J. 535 (N.C.M.R. 1979); United States v. Tobey, 6 M.J. 917 (N.C. M.R.1979); United States v. Santos, 4 M.J. 610 (N.C.M.R.1977).

approve. Appellate defense counsel argues that the provisions in Appellate Exhibit II with respect to suspension of the discharge make clear that the parties contemplated that Miles could not be administratively discharged for the same misconduct which was the subject of the court-martial.

Of course, since this was a trial by military judge alone, this portion of the pretrial agreement was not before the judge at the time that he conducted the providence inquiry; so, it could hardly have placed him on notice of any implied condition that not only would the punitive discharge be remitted if Miles behaved properly for the next year, but also that no administrative discharge would be issued.[3]

Secondly, we note that his post-trial affidavit was executed by Miles in May, 1980—more than six months after the time when, according to that very affidavit, he had been apprised that administrative discharge proceedings would be initiated. Moreover, his defense counsel did not utilize a *Goode* response to raise any question concerning providence. We have already made clear that an appellant's post-trial affidavit submitted long after the fact will not be allowed to disturb a guilty plea which is prefaced by a providence inquiry appearing to be regular on its face. *United States v. Joseph,* 11 M.J. 333 (C.M.A.1981); *United States v. Davenport,* 9 M.J. 364 (C.M.A. 1980).

In *United States v. Bedania,* 12 M.J. 373 (C.M.A.1982), we explained that a military judge need not investigate on his own motion whether an administrative discharge might result from the same misconduct on which the trial by court-martial is predicated. Moreover, a provision for suspension of a punitive discharge and its remission after a period of satisfactory behavior does not of itself place a military judge on notice of an agreement or understanding that an accused will not be administratively discharged. *United States v. Bedania, supra.*

Certainly, there is nothing amiss in a military judge's asking an accused if he realizes that, regardless of the outcome of his court-martial, an administrative discharge may subsequently be issued by reason of the misconduct of which he is convicted pursuant to his guilty plea. Likewise, a pretrial agreement may appropriately contain a disclaimer like that now being used in the Navy, *see United States v. Miller,* 7 M.J. 535, 537 (N.C.M.R.1979), (Cedarburg, C.J., concurring), which makes clear that the accused may be processed for an administrative discharge even if a punitive discharge is suspended or disapproved pursuant to the agreement. However, typically the military judge has no obligation to ascertain what is an accused's understanding as to whether he may be administratively discharged. *See United States v. Bedania, supra.*

### III

The decision of the United States Navy Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Navy for submission to that court for further proceedings under Article 66, UCMJ, 10 U.S.C. § 866.

Judges COOK and FLETCHER concur.

---

3. After he had adjudged the sentence, the military judge did inquire as to appellant's understanding of the sentence terms contained in Appellate Exhibit II; but at that time no one referred to the possibility of an administrative discharge.