UNITED STATES, Appellee,

v.

William D. HANNAN, First Lieutenant,
U.S. Army, Appellant.

No. 42,988.
CM 438946.

U.S. Court of Military Appeals.

Jan. 16, 1984.

For Appellant: *Captain William T. Wilson* (argued); *Colonel William G. Eckhardt, Captain Warren G. Foote* (on brief); *Colonel Edward S. Adamkewicz, Jr., Major Raymond C. Ruppert, Captain Richard W. Vitaris, Captain David M. England.*

For Appellee: *Captain Debbie J. O'Bryan* (argued); *Colonel James Kucera, Lieutenant Colonel John T. Edwards, Captain Thomas E. Booth, Captain Peter M. Donawick* (on brief); *Colonel R.R. Boller* and *Major Michael L. DeBusk.*

*Opinion of the Court*

EVERETT, Chief Judge:

Usually, we are confronted with cases in which an appellant contends that his sentence is too long. Hannan, on the other hand, complains that the sentence he received should *not* have been reduced by the convening authority. This seemingly paradoxical complaint does not result from masochism on appellant's part. Instead, it reflects the reality that, where court-martial sentences are concerned, sometimes more is less in terms of practical effect because of the way in which good-conduct time and parole eligibility are computed. *See, e.g., United States v. Larner,* 1 M.J. 371, 372–73 (C.M.A.1976).

Specifically, Hannan urges that if his sentence had remained at a year and a day, rather than being reduced to only a year, he probably would have been paroled and released from confinement earlier than the date on which he was released. While we conclude that errors occurred in connection with appellant's case, we perceive no basis for giving him any further relief than he has already received.

## I. THE FACTS

The Commanding General of the 82nd Airborne Division at Fort Bragg, North

Carolina, referred for trial by general court-martial these charges against Hannan: (a) Charge I: specification 1—failure to go to his place of duty on January 3, 1979; and specification 2—unauthorized absence from March 12 to May 19, 1979 [1]; (b) Charge II: specification 1—larceny of a wallet of Captain Ben R. Cabell containing $80 in currency and a military identification card issued to Captain Cabell; and specification 2—larceny of ten parachutes belonging to the United States Government and having a value in excess of $2,500.00 [2]; (c) Charge III: conduct unbecoming an officer in that Hannan on January 15, 1979, "attempt[ed] to induce Staff Sergeant E-6 Charles Johnson ... to submit a false statement ... to conceal ... [appellant's] unauthorized absence from his place of duty" [3]; (d) Charge IV: specification 1—uttering a check for $100.00 with the forged signature of Ben R. Cabell; specification 2—uttering a check for $1,000.00 with Cabell's forged signature; and specification 3—uttering a saving account withdrawal slip for $4,000.00 with Cabell's forged signature [4].

Hannan—who was represented by both military and civilian counsel—was arraigned at an Article 39(a) [5] session on August 30, 1979; and hearings on various defense motions extended through September 1st. Then, after the judge had ruled on the motions adversely to appellant [6], pleas of not guilty to all charges and specifications were entered; and the judge scheduled September 11 as the first day of trial.

When proceedings resumed on that date, Hannan, who previously had indicated his desire to be tried by a court with members, submitted a request for trial by judge alone, which he had signed on September 2nd. After the judge accepted this request, appellant then changed his pleas to guilty of specification 2, Charge I, and specification 1, Charge II; and guilty of the lesser included offense of wrongful appropriation under specification 2, Charge II. As to the other offenses charged, Hannan maintained his not-guilty pleas.

A providence inquiry ensued, during which the judge explained appellant's rights and the elements of the offenses and obtained Hannan's version of the offenses to which he pleaded guilty. The judge ascertained that all the parties believed that dismissal, confinement for 2½ years, and total forfeitures was the maximum punishment for the offenses to which appellant pleaded guilty. In response to questions from the judge, appellant affirmed that the adverse rulings on defense motions had not caused the change in his pleas, but that "a number of factors contributed to the decision to tender a guilty plea to the Charges and Specifications. As I have pleaded guilty, certainly there were other factors—not serious factors—the maximum punishments specified by the Charges—the trial—a number of factors entered into the decision to tender a plea of guilty." Hannan further explained "that there were a number of things that were considered when I determined that it was in my best interest to plead guilty to what I pled guilty to. I believe that I am guilty and I want to see this thing through to the conclusion."

Then the judge reviewed with appellant the pretrial agreement into which he had entered. This agreement arose out of an offer to plead guilty which Hannan had signed on September 2. This offer called for him to plead guilty to the offenses to which he later entered such pleas and specified that the Government would present no evidence as to the other offenses listed on the charge sheet. The convening authori-

---

1. Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886.

2. Article 121, UCMJ, 10 U.S.C. § 921.

3. Article 133, UCMJ, 10 U.S.C. § 933.

4. Article 123, UCMJ, 10 U.S.C. § 923.

5. Article 39(a), UCMJ, 10 U.S.C. § 839(a).

6. The judge reserved his ruling on a defense motion to dismiss certain charges because of their alleged lack of service-connection. This motion was mooted by the findings of not guilty as to the affected charges.

ty's obligation under the pretrial agreement was set forth in a separate document, which provided a punishment ceiling of "confinement at hard labor for a period of one year, dismissal, and total forfeiture of pay and allowances for a period of one year." The judge stated expressly that he had not seen this "sentence portion" of the pretrial agreement and that he did not "intend to do so until after sentence is announced in this case."

Appellant assured the court that the pretrial agreement had been made freely and voluntarily; that he believed that he understood it fully; and that he had no questions thereon. Appellant also stated that his counsel had mentioned the possibility of a pretrial agreement "as one of the number of options available to me in terms of the totality of this case." Ultimately, he had decided to make an offer to plead guilty and then had related this decision to his military and civilian counsel. Hannan was unaware of any overtures by the Government for a pretrial agreement. Moreover, appellant, trial counsel, and both the civilian and military defense counsel assured the judge that they were unaware of any *sub rosa* agreements or additional terms in the agreement. Appellant acknowledged that his military and civilian counsel had explained to him "the intricacies of military punishments and what that means in plain language." Ultimately, the judge determined the guilty pleas were provident and accepted them. Then he entered findings of guilty based thereon and found the accused not guilty of the remaining charges and specifications.

During the sentencing proceedings, the judge discussed with counsel the pretrial restraints to which appellant had been subjected and stated that he would "consider that in my deliberation on the sentence." No evidence in extenuation and mitigation was presented by the defense, but Hannan made an unsworn statement through his civilian defense counsel. The Government

offered no rebuttal evidence. Then, after arguments, the judge closed court for almost an hour to deliberate on the sentence. Ultimately, he announced that appellant was sentenced to dismissal, forfeiture of $1100.00 pay per month for 2 years, and confinement at hard labor for 1 year and 1 day. Then the judge reviewed the pretrial agreement further with appellant and, among other things, remarked that Hannan's sentence called for confinement for a period of 1 year and 1 day, while the pretrial agreement bound the convening authority "to approve no more than one year's confinement." The court-martial was then adjourned.

At the time of appellant's trial, Army Regulation 190–47, United States Army Correctional System, dated October 1, 1978, provided that "[a] military prisoner with an unsuspended discharge, a dismissal, [or] an administrative discharge" would "be eligible for parole consideration" if "confined pursuant to a sentence or aggregate sentence of: (1) More than 1 year and not more than 3 years" and if he "has served one-third of his term of confinement, but in no case less than 6 months." Para. 12–5a. Only under "exceptional circumstances" could "the Army Clemency Board ... waive the eligibility requirements." Para. 12–5c.[7] Thus, an accused who is sentenced to confinement for more than 1 year may be released on parole after he has served 6 months of confinement, while a person sentenced to one year's confinement usually will be ineligible for parole and will serve the full 12 months, less any good-conduct time.

Having in mind this condition for parole eligibility, the trial judge, Colonel Pedar C. Wold, addressed this clemency recommendation to the convening authority on October 31, 1979:

1. My sentence in the subject case included confinement at hard labor for one year and one day. My deliberations on

---

7. The Army Clemency Board may waive the maximum service requirement or the minimum term of confinement, so that a theoretical possibility exists of immediate parole for a prison-

er serving any term of confinement. *United States v. Surry,* 6 M.J. 800 (A.C.M.R.1978), *pet. denied,* 7 M.J. 62 (1979).

an appropriate sentence convinced me that while confinement for that period was appropriate under all the circumstances, Lieutenant Hannan merited an opportunity to be considered for parole based on his conduct while serving his sentence.

2. As a result of the pre-trial agreement in this case, you are required to approve no more than one year's confinement at hard labor. This will result in making Lieutenant Hannan ineligible for parole consideration.

3. Accordingly, I respectfully recommend that you make appropriate inquiries into Lieutenant Hannan's conduct in the period since his trial and, if it appears that he would otherwise have been qualified for parole, that you approve a period of confinement which will approximate the same result.

The staff judge advocate's review, dated November 6, 1979, refers to Judge Wold's recommendation for clemency and to a plea for clemency which Hannan's civilian defense counsel had submitted on September 17, 1979. Both documents were attached to the review. The review did not mention parole eligibility but did advise the convening authority that

in accordance with your agreement with the accused, no confinement in excess of 1 year may be approved, nor may forfeitures be applied for a period of more than 1 year. The sentence is legally correct and is not in excess of that which could have been adjudged. In my opinion, the sentence is appropriate.

On November 26, 1979, appellant's civilian defense counsel submitted comments on the post-trial review, but in these comments he did not mention eligibility for parole. Before the defense comments were received on December 3, 1979, the convening authority had taken action in accordance with his staff judge advocate's recommendation and had reduced the sentence to that specified in the pretrial agreement. On December 10, the staff judge advocate informed the convening authority that, despite the untimely manner in which the comments were filed, he recommended that they be considered, but that, after his review of the rebuttal, he adhered to his earlier advice. The convening authority thereupon considered the rebuttal to the post-trial review and then reaffirmed his action.[8]

On April 30, 1980, appellant, who had been transferred to the United States Disciplinary Barracks at Fort Leavenworth, Kansas, executed an affidavit concerning some of the events in his trial. Hannan stated that on September 1, 1979, after the Article 39(a) session had been completed, he, his military counsel—Major Clark—and his civilian defense counsel—Mr. Bass—had "proceeded to assess the current situation in light of the military judge's rulings on pretrial motions." Because of the prospect raised by Major Clark "that a jury of officers, hearing the evidence would cumulate that evidence and infer criminal disposition, thereby ensuring a rather heavy penalty.... we discussed the possibilities of a plea bargain, and the request for trial by judge alone."

Hannan further stated:

In the context of this discussion, the topic of parole eligibility was raised and Major Clark assured ... [Hannan and his civilian counsel] that the general statute which conferred parole eligibility after serving one-third of any sentence to confinement would be operative. Parole eligibility after serving one-third of any sentence to confinement was depicted and understood as a certainty.

According to appellant's affidavit, his military defense counsel also had "advised that United States Disciplinary Barracks officials would credit a total of 58 days of pre-trial Arrest in Quarters toward my sentence when I arrived at the USDB." Hannan further asserted:

Accordingly, these discussions culminated in a decision to tender a pre-trial

---

**8.** Immediately upon the conclusion of the trial, appellant had requested a deferment of confinement, but this request had been denied by the convening authority on September 24, 1979.

agreement, in order to obtain the benefit of limitations on sentencing. Notwithstanding the limitation on sentencing agreed to by the Convening Authority, I was under the mistaken impression that the 115 days of pre-trial confinement would be credited toward that sentence by USDB officials; in addition to statutory "good time" deductions and earnable abatement deductions; and that I would be eligible for parole after serving one-third of any sentence to confinement.

The affidavit added that

on September 11, 1979, during a luncheon recess from the trial proceedings ... civilian defense counsel again posited the question of parole eligibility by stating: "You know, in the civilian courts, the sentence would have to be a year and a day for Dennis to be eligible for parole," or words to that effect. Again, Major Clark advised that I would be eligible for parole after serving one-third of the sentence to confinement, as the sentence limitations were stated in the pre-trial agreement.

Consequently, I persisted in tendering the guilty plea, believing mistakenly as I did, that I would serve less than four months if, in fact, a sentence of one year was approved by the Convening Authority.

The first inkling I had that the general statute which conferred parole eligibility after service of one-third of a sentence to confinement would not be operative occurred when Judge Wold, after finally closing the Court, looked up and stated: "On its face, it appears that the pre-trial agreement negotiated by Lt. Hannan would make him ineligible for parole," or words to that effect. Later, after we had departed the courtroom and returned to the SJA offices in the Division Area to discuss post-trial matters, Judge Wold telephoned Mr. Bass and stated that ineligibility for parole was in fact the case; therefore, he was inclined to write a letter requesting clemency on this basis to the Convening Authority. Judge Wold did do this, all to no avail.

According to Hannan's affidavit, upon arriving at the disciplinary barracks, he had sought "to obtain credit" for pretrial arrest in quarters and restriction in lieu of arrest but had "received negative replies concerning the accreditation of pre-trial time." He continued:

I then proceeded to solicit answers to the question of parole eligibility. Initially, through the domicile counselors, I received a negative reply concerning my eligibility for parole. I received the same negative answer from Trial Defense Service personnel when I posed the question to them. I received the same negative answer from Major Kaplan, of the post Staff Judge Advocate office. Notwithstanding three negative replies, I prepared a parole plan and forwarded it along with the referenced DA 2496 to the Parole Officer, requesting a determination be made as to my parole eligibility so that I could apply for parole if eligible. The response that I received from the Parole Officer ... [was that "with an approved sentence of confinement for one year you are not eligible for parole."]

\*  \*  \*  \*  \*  \*

Further, had I known what I know now concerning parole eligibility and the accreditation of pre-trial confinement time at the time the pre-trial agreement was negotiated in my behalf by Major Clark, military defense counsel; I would not have allowed such an agreement to be negotiated in my behalf; nor would I have persisted in the guilty plea.

Appellant's affidavit, which was filed with the United States Army Court of Military Review as Defense Appellate Exhibit A gave rise there to assignments of error that "appellant was denied effective assistance of counsel when his military defense counsel erroneously assured him that he would be eligible for parole" and that his guilty pleas "were improvident because the military judge failed to discuss with the appellant the effect that the sentence limitation provision found in his pretrial agreement would have on his eligibility for parole."

In rebuttal, the Government filed the affidavit of Hannan's military defense counsel who stated that during July and August 1979, he had "without success" advised appellant and Mr. Bass that he "believed we should attempt to enter into a pretrial agreement." After the Article 39(a) session on September 1, 1979, during which the military judge had ruled adversely on several defense pretrial motions, the military counsel had voiced his "opinion that based upon the totality of the circumstances if LT Hannan was convicted of all the charged offenses, in all probability he would receive from a court composed of members, a heavy sentence of approximately 10 years confinement at hard labor." He had "not depict[ed] as a certainty that LT Hannan would receive credit for time already served while in arrest in quarters"; but he had "suggested that since one of the purposes of the USDB was rehabilitation, he had nothing to lose by asking for the credit for pretrial arrest on his sentence." Major Clark did "not remember" the civilian defense counsel "stating that parole eligibility in civil courts require [sic] a sentence of more than a year."

According to his affidavit, the military defense counsel believed

> that the decision to plead guilty was not based primarily upon future parole eligibility. It was based upon the extremely weak defenses we had, weak extenuation and mitigation, and the probability of a severe sentence. Further, in the pretrial agreement the government did not just withdraw certain charges but agreed not to present any evidence on them, this resulting in a finding of not guilty which would act as a bar to any further prosecution for the forgery offenses in federal court.

Subsequently, appellate defense counsel filed two supplemental assignments of error —namely, that "[u]nder the particular facts ... the convening authority approved a sentence which, as a matter of law, was in excess of the sentence adjudged" and that "[a]ppellant was denied due process of law when his request for a determination of parole eligibility was summarily denied on the basis that his approved sentence to confinement for one year made him ineligible for parole." Also, Hannan filed an affidavit from his civilian defense counsel.

Mr. Bass averred "[t]hat, during our many discussions, [the military defense counsel,] Major Clark, stated, on numerous occasions ... that ... [appellant] would be eligible for a parole after serving one-third of any sentence imposed." Moreover, from his discussions with Major Clark, Mr. Bass "clearly understood that the time to be credited to Lt. Hannan of approximately 100 days [by reason of pretrial restraint] would be automatically deducted from the amount of time he would serve in prison." Bass had remarked to appellant, Major Clark, and a Sergeant First Class John R. Files that in a Federal district court a defendant "had to receive a sentence in excess of one year if he was to receive parole consideration after service of one-third of his sentence," and he had mentioned "that a former United States District Judge in the Eastern District of North Carolina would not impose a sentence of one year but instead, would always impose a sentence of one year and one day so that the defendant would be eligible for parole consideration after service of one-third of his sentence." According to this affidavit, Mr. Bass had "specifically raised the question of one year and one day because under Lt. Hannan's plea agreement, he was to receive a sentence of one year"; and "I wanted to make certain that he would be eligible for parole after service of one-third of the sentence." The civilian defense counsel "did not become aware of the fact that Lt. Hannan was not eligible for parole after service of one-third of his sentence until about two hours after the termination of his court martial when I received a telephone call from Col. Wold, the presiding judge at Lt. Hannan's court martial."

In reply, the Government filed with the Court of Military Review the affidavit of Sergeant Files, who was then assigned to the Army Trial Defense Service in Korea. Files had been present on September 11,

1979, "when a conversation between" Major Clark and Mr. Bass "took place" about appellant's eligibility for parole. "From the conversation I got the impression it was part of a continuing discussion." The civilian counsel had "reflected that in 'civilian' law a person must be adjudged at least a year and a day in order to be eligible for parole. Major Clark replied that in the military a person was eligible for parole if one year of confinement was adjudged"; and he had "assured Mr. Bass that" appellant "would be eligible for parole after completing one third of a year sentence."

The Court of Military Review, in its unpublished opinion, rejected appellant's contention that he had pleaded guilty because of misadvice from his counsel "concerning [his] eligibility for parole." In view of the charges against appellant, the maximum punishment to which he was subject, and other circumstances, the court concluded that "we simply do not believe his assertion." *Id.* at 3. The court below "also reject[ed] ... [Hannan's] argument that his plea was improvident because the trial judge did not discuss parole eligibility with him." *Id.* at 4. Since release on parole is not a certainty even when a prisoner is eligible for consideration, the Court of Military Review disagreed with Hannan's contention that "by reducing the confinement by one day in accordance with the [literal] terms of the pretrial agreement," "the convening authority [had] increased the severity of the sentence." *Id.* at 5. In a footnote the court remarked:

> We note that even though the appellant and counsel were well aware prior to the convening authority's action of the effect of the pretrial agreement on parole eligibility, the appellant did not relieve the convening authority of his obligation to approve no more confinement than for one year. To have done so would have been within the powers of the appellant (at that point the beneficiary of the agreement) and it would have mooted the present issue.

*Id.* at 5 n. 5.

Also, the Court of Military Review rejected an argument by Hannan that he had

been "denied due process" because of "his having been ... at least misled ... about his eligibility for parole consideration." However, in view of appellant's being "misled" as to his parole eligibility and "in an abundance of caution," the Court of Military Review reduced appellant's forfeitures by 1 month in order to "grant him some sentence relief." *Id.* at 6.

In this Court Hannan raised the issues he had presented to the Court of Military Review. We granted his petition to consider this issue:

WHETHER UNDER THE PARTICULAR FACTS OF THE CASE *SUB JUDICE*, THE CONVENING AUTHORITY APPROVED A SENTENCE WHICH, AS A MATTER OF LAW, WAS IN EXCESS OF THE SENTENCE ADJUDGED.

## II. LEGAL DISCUSSION

### A

■ For defendants in criminal cases, the bottom-line question often is how much time must be spent in confinement. If this time can be reduced by any means—including probation at the time of trial or subsequent release on parole—the defendant usually is anxious for this to be done. Moreover, a defendant generally will welcome any improvement in the conditions under which he will be confined—for example, by being placed in a minimum custody grade, in a retraining program, or on work release. Because of the importance of such matters to an accused, his defense counsel should be aware of the rules and policies which will affect the practical impact of sentences to confinement. Indeed, valuable service may be rendered by a lawyer in assisting his client to receive more favorable treatment in connection with a sentence to confinement. *See* Craven, *Random Thoughts on Criminal Sentencing in the United States District Court,* 45 Fed.Prob. 12–16 (December 1981). With this in mind, our Court sponsored a panel discussion of "Perspectives on Sentencing and Punishment" as

part of the 1983 Homer Ferguson Conference on Appellate and Trial Practice.

If appellant's counsel had been fully aware of the rules for parole eligibility prescribed by Army Regulation 190–47, they might have specified in the pretrial agreement that the maximum confinement would be a year and a day, rather than only one year. However, we cannot assume this with certainty. We are aware that not every prisoner seeks release on parole. Some may prefer to be released outright from confinement on their regular release date, rather than to be released earlier on parole but then remain subject to the conditions of parole until the end of their full term without deduction for good-conduct time. A prisoner may also anticipate that, if his parole is revoked, no credit towards service of his sentence will be allowed for time spent outside the confinement facility on parole.

Of course, not every inmate who becomes eligible for parole is ever placed on parole—or placed on parole on the first date he becomes eligible for parole. We have been provided no statistics as to the percentage of Army prisoners serving relatively short sentences who are placed on parole. However, we suspect that in many instances the Clemency Board is reluctant to utilize parole where a term of less than 2 or 3 years is involved, since there has been relatively little opportunity to observe the prisoner and since utilization of parole requires the effort of enlisting the participation of the United States Probation System.

■ In short, we can only speculate what choices Hannan and his lawyers would have made if they had adequately informed themselves as to appellant's parole eligibility and his likelihood of receiving parole under different sentence scenarios. Unfortunately, they obviously were not fully informed in this regard. Nonetheless, it is apparent to us—just as it was to the Court of Military Review—that any expectation of Hannan and his lawyers that he would be eligible for parole was not an inducing cause of his guilty pleas. Instead, in light of the sequence of events that led up to the pretrial agreement, appellant's guilty pleas obviously resulted from the strong government case and from the convening authority's willingness to enter a pretrial agreement whereunder some charges would be dismissed and a low ceiling set on punishment.[9]

### B

■ During his painstaking providence inquiry, the military judge was free to inquire whether appellant and his counsel had discussed parole eligibility or any possible collateral results of conviction on the charges to which the guilty pleas were being entered; but he was under no obligation to inquire into such matters on his own initiative. *United States v. Miles*, 12 M.J. 377 (C.M.A.1982); *United States v. Bedania*, 12 M.J. 373 (C.M.A.1982). Moreover, there was little occasion for Judge Wold to raise the question of parole and parole eligibility during the providence hearing, since at that time he quite properly had not apprised himself of the ceiling on punishment which the convening authority had established in the pretrial agreement. Thus, the trial judge can in no way be blamed for any misunderstanding on the part of appellant and his counsel as to when Hannan would be eligible for parole.

### C

■ Among the objects of punishment is rehabilitation, and parole is one of the correctional tools utilized to facilitate rehabilitation of prisoners. Thus, in seeking to arrive at an appropriate sentence, Judge Wold properly took into account the rules governing parole eligibility. Indeed, military judges can best perform their sentencing duties if they are aware of the directives and policies concerning good-con-

---

9. According to appellant, his military defense counsel, Major Clark, had also led him to believe that he would receive credit on his sentence to confinement with respect to time spent in pretrial arrest or restriction in lieu of arrest. Even if Clark gave this rash assurance—which we doubt—we are sure that this also was not the inducing cause of the guilty plea.

duct time, parole, eligibility for parole, retraining programs, and the like.

After adjudging appellant's sentence, the judge became aware of the pretrial agreement and perceived its possible impact on the parole eligibility which the judge had intended for Hannan. Under those circumstances, the judge acted commendably by writing the convening authority to explain why he had adjudged a term of confinement for a year and a day and to point out the effect on parole eligibility if the convening authority reduced the confinement to 1 year pursuant to the pretrial agreement.

■ Although a pretrial agreement differs in some respects from an ordinary contract, see *Shepardson v. Roberts,* 14 M.J. 354 (C.M.A.1983), like other contracts it must be construed and applied in accord with its basic purpose. Thus, in *United States v. Cook,* 12 M.J. 448 (C.M.A.1982), we looked at "[t]he underlying theme of the pretrial agreement" and concluded that when a guilty plea had been set aside as improvident, the convening authority was free to resurrect charges withdrawn previously pursuant to the agreement. Otherwise, "the convening authority has, in a sense, not received the expected benefit of his bargain. *United States v. Mills,* 12 M.J. 1, 3 (C.M.A.1981)." *Id.* at 455.

■ In the case at bar, there is no indication that the convening authority agreed to a ceiling of 1 year on confinement because he wished to prevent Hannan from being eligible for parole. Instead, the ceiling undoubtedly was set for the benefit of appellant; and it was never intended by the parties that the agreement would obligate the convening authority to take any action which in practical effect would increase the severity of the sentence adjudged by the trial judge. *Cf. United States v. Larner,* supra.

The military judge's letter to the convening authority put him and his staff judge advocate on notice that literal performance of the pretrial agreement might contravene the purposes of the agreement. Under these circumstances the staff judge advocate should have discussed in his review how parole eligibility would be affected if confinement were reduced pursuant to the pretrial agreement. Instead of doing so, he simply mentioned in the review that the pretrial agreement called for 1 year's confinement. Therefore, from reading his staff judge advocate's review, the convening authority might well have received the erroneous impression that, even if he agreed fully with the trial judge and believed that Hannan should be eligible for parole and even if defense counsel were willing to release him from the pretrial agreement, he had no choice but to reduce the sentence to confinement.

While it would have been perfectly appropriate for the staff judge advocate to inquire of trial defense counsel as to their client's wishes, we can readily understand that he would have expected to hear from them if their client wished to be made eligible for parole. Instead, he apparently heard nothing; and, as the Court of Military Review noted, Hannan's lawyers never took any formal action to release the convening authority from his obligation under the pretrial agreement and never requested that the convening authority refrain from reducing the confinement to 1 year.

Even after the staff judge advocate's review had been served on defense counsel, no reference was made to Hannan's parole eligibility in the comments to the review. Under these circumstances, the staff judge advocate and the convening authority might well have assumed that appellant had decided that parole was not worth pursuing and was willing for the convening authority to act pursuant to the terms of the pretrial agreement. Therefore, the failure of defense counsel to seek clarification of the staff judge advocate's review should be construed as a waiver of any complaint about the convening authority's action. See *United States v. Goode,* 1 M.J. 3 (C.M. A.1975).

D

■ From appellant's affidavit and information provided by appellate counsel during oral argument, it appears that, after

several months' confinement, appellant sought to be paroled; but his request for parole was disapproved because of the parole eligibility requirements in Army Regulation 190–47. However, that regulation also provides that, under "exceptional circumstances ... the Army Clemency Board may waive the [usual] eligibility requirements," para. 12–5c; and presumably appellant could have been considered for parole under this proviso. *United States v. Surry,* 6 M.J. 800 (A.C.M.R.1978), *pet. denied,* 7 M.J. 62 (1979). Certainly, the circumstances of his case—including the effort by Judge Wold, the original sentencing authority, to make him eligible for parole—could be viewed as "exceptional." Unfortunately, so far as we can ascertain, neither Hannan nor any of his legal advisors brought these circumstances to the attention of correctional officials or sought explicitly to invoke the exception in the parole regulations. Therefore, the failure to consider Hannan's application for parole on its merits cannot be attributed solely to the Government.[10]

**E**

█ Even if we blamed the Government for the convening authority's reduction of

the sentence to confinement by one day and for the failure of correctional officials to consider appellant for parole under the "exceptional circumstances" proviso, appellant still has not established that he is entitled to relief beyond that already received from the Court of Military Review.

In view of his good-conduct time, he would have been released from confinement only about three months earlier if he had been paroled on the earliest possible date; and while on parole he would have been subject to some restrictions on his activity. Moreover, as we have already observed, it is highly speculative that Hannan would have been paroled even if he had been deemed eligible for parole. Therefore, we perceive no occasion for granting appellant any relief beyond that which the Court of Military Review gave "in an abundance of caution."

**III**

The decision of the United States Army Court of Military Review is affirmed.

Judges COOK and FLETCHER concur.

---

10. Appellant claims that he was misadvised by confinement officials that he was ineligible for parole. While technically this information may have been accurate, it ignores the possibility that he could obtain from the Army Clemency Board a waiver of the usual parole eligibility requirements. *See United States v. Surry, supra.*