UNITED STATES, Appellee,

v.

Ramon B. CABRAL, Jr., Machinist's
Mate Second Class,

U.S. Navy, Appellant.

No. 46792.
NMCM No. 83–0471.

U.S. Court of Military Appeals.

Aug. 26, 1985.

■■■■■■■■■■

For Appellant: *Lieutenant Rickey P. Roecker*, JAGC, USNR (argued); *Lieutenant Colonel M.W. Lucas*, USMC, and *Lieutenant Ann D. Carroll*, JAGC, USNR (on brief).

For Appellee: *Lieutenant Steven P. Benson*, JAGC, USNR (argued); *Captain W. J. Hughes*, JAGC, USN (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

I

A military judge sitting as a special court-martial tried the accused on a charge with three specifications alleging various larcenies of property of the United States, in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. Pursuant to a pretrial agreement, the accused pleaded guilty; and, after an extensive providence hearing, the judge entered findings of guilty as charged. The judge sentenced Cabral to a bad-conduct discharge, confinement for 90 days, and reduction to pay grade E–3.

After imposing the sentence, the judge reviewed with Cabral the provisions of the pretrial agreement. According to this document, the convening authority was free to approve confinement or restraint, forfeiture or fine, and reduction "as adjudged." He could also approve a punitive discharge, if adjudged by the court-martial, but in that event, he would be required to suspend it for a year. The military judge explained the reduction provision to the accused in these terms:

Finally, the court has adjudged reduction in rate to pay grade E–3. By the terms of the Pretrial Agreement, that reduction is left as adjudged. So the Convening Authority is free to approve reduction in rate to pay grade E–3.

1. *United States v. Goode*, 1 M.J. 3 (C.M.A.1975).

Cabral confirmed that this was his understanding; and none of the counsel voiced any disagreement.

In acting on the case, the convening authority stated:

In the foregoing case of Machinist's Mate Second Class Ramon Barrameda CABRAL, Junior, U. S. Navy, 555 35 3268, the sentence is approved and will be duly executed, but the bad conduct discharge is suspended for a period of one year from the date of trial, at which time, unless the suspension is sooner vacated, the suspended portion of the sentence will be remitted without further action.

The Naval Brig, Naval Station, San Diego, California, is designated as the place of confinement. *It has been administratively determined that the reduction to pay grade E–3 is to the rate of Machinist's Mate Fireman.*

(Emphasis added.)

In his review of the case, the staff judge advocate observed:

The military judge took judicial notice of [the Manual of the Judge Advocate General] JAGMAN Section 0118 which prescribes automatic reduction to E-1 if either a bad conduct discharge is approved by the convening authority or any confinement in excess of 90 days is approved by the convening authority.

\* \* \* \* \* \*

The convening authority's action approved the sentence awarded by the military judge, but was silent regarding the automatic reduction to E-1 provided in JAGMAN Section 0118. The convening authority was aware of the provision and did not suspend or disapprove automatic reduction in rate as provided in JAGMAN Section 0118(a)(2). It is accordingly determined that the reduction in rate approved by the convening authority is to pay grade E-1 as provided by JAGMAN Section 0118(a).

No *Goode*[1] response was filed to the staff-judge-advocate's review; and the officer

exercising general court-martial jurisdiction took this action:

In the foregoing case of Machinist's Mate Ramon Barrameda CABRAL, Jr., U. S. Navy, 555–35–3268, the sentence as approved and partially suspended by the convening authority is approved, including reduction to pay grade E-1.

In its *per curiam* opinion affirming the findings and sentence as approved on review below, the United States Navy-Marine Corps Court of Military Review decided:

Appellant's reduction to pay grade E-1 was effected pursuant to the provisions of § 0118 of the *Manual of the Judge Advocate General* and was not violative of the pretrial agreement.

We granted review to determine whether this conclusion was correct.[2] We hold that it was not.

## II

The Manual for Courts-Martial, United States, 1951, provided:

In the case of an enlisted person of other than the lowest pay grade, a sentence which, as ordered executed or as finally approved and suspended, includes either (1) dishonorable or bad conduct discharge, whether or not suspended, (2) confinement, or (3) hard labor without confinement, immediately, upon being ordered executed or upon being finally approved and suspended, reduces such enlisted person to the lowest enlisted pay grade; however, the rate of pay of the person so reduced shall be commensurate with his cumulative service.[3]

In January 1956, this Manual provision was amended so that the automatic reduction would apply "[u]nless otherwise prescribed in regulations promulgated by the Secretary of the Department concerned." Exec. Order No. 10652, January 10, 1956, 21 Fed.Reg. 235. Presumably this amendment reflected a belief that the automatic-reduction provision in the 1951 Manual was too inflexible and that the Secretaries of the military departments should have some discretion to mitigate the automatic reduction.

In 1959, this Court ruled that the Manual provisions for reduction to the lowest pay grade upon approval of a court-martial sentence including either a punitive discharge, confinement, or hard labor without confinement violated the Uniform Code of Military Justice. The rationale for this decision was that the reduction provision was

so interwoven with the courts-martial process that it cannot be regarded as anything but judicial in purpose and effect. As a judicial act, it operates improperly to increase the severity of the sentence of the court-martial.

*United States v. Simpson*, 10 U.S.C.M.A. 229, 232, 27 C.M.R. 303, 306 (1959).

Congress obviously disagreed with this result, for it promptly added Article 58a to the Code, 10 U.S.C. § 858a, whereunder, "[u]nless otherwise provided in regulations to be prescribed by the Secretary concerned," an enlisted member would be reduced to pay grade E-1 on the date of approval by the convening authority of a sentence including (1) a dishonorable or bad-conduct discharge; (2) confinement; or (3) hard labor without confinement. Pub.L. No. 86–633, § 1(1), 74 Stat. 468 (1960).

In view of the clear legislative mandate, this Court held in *United States v. Powell*, 12 U.S.C.M.A. 288, 30 C.M.R. 288 (1961), as follows: "The Article is merely declaratory

---

2. The issues granted were:

I

WHETHER THE ACTION OF THE OFFICER EXERCISING GENERAL COURT–MARTIAL JURISDICTION REDUCING PETITIONER TO PAY GRADE E-1 VIOLATED JAGMAN § 0118a(2) AND PARAGRAPH 84*d*, MCM.

II

WHETHER UNDER THE PLEA AGREEMENT THE CONVENING AUTHORITY WAS REQUIRED TO EXERCISE HIS DISCRETION, AS PROVIDED BY JAGMAN § 0118a(2), TO "RETAIN THE ACCUSED IN" A PAY GRADE NO LOWER THAN THAT SPECIFIED IN THE AGREEMENT.

3. *See* para. 126*e*, Manual for Courts-Martial, United States, 1951. Similar language appears in paragraph 116*d* of Manual for Courts-Martial, U.S. Army, 1949.

of the services' undoubted authority administratively to reduce any accused whose punishment comes within its terms." Relying on the "sharp line between administrative and judicial action," *id.* at 289, 30 C.M.R. at 289, the opinion "expressly distinguished the authority judicially to reduce an individual from the undoubted authority of the armed services administratively to deprive him of his grade." *Id.* at 290, 30 C.M.R. at 290.

The services have responded in different ways in their use of the discretion granted by Article 58a. For some years the Navy did not utilize the automatic reduction at all. However, at the time of the accused's trial, the Navy JAG Manual provided in § 0118a(1), as follows:

> Reduction to the lowest enlisted pay grade will be automatically effected only in a case in which the sentence, as approved by the convening authority, includes, whether or not suspended, either:
>
> (a) A punitive discharge, or
>
> (b) Confinement in excess of 90 days (if the sentence is awarded in days) or three months (if the sentence is awarded in other than days).

Section 0118a(2) further provides:

> In his sole discretion, the convening authority or supervisory authority may retain the accused in the pay grade held at the time of sentence or an intermediate pay grade and suspend the automatic reduction to pay grade E–1 which would otherwise be effected under Article 58a, Uniform Code of Military Justice, and this section, utilizing the forms in Appendix 14d, *Manual for Courts-Martial, 1969 (Rev.)*, as guides. The automatic reduction may be suspended without regard to whether any part of the approved sentence was suspended. If, however, the adjudged sentence includes a reduction in pay grade, the reduction in pay grade should be suspended for the same period as the automatic reduction is suspended. Additionally, the convening authority may direct that the accused serve in pay grade E–1 while in confinement but be returned to the

pay grade held at the time of sentence or an intermediate pay grade upon release from confinement. Failure of the convening authority to address automatic reduction will result in the automatic reduction to pay grade E–1 on the date of the convening authority's action.

### III

Emphasizing the distinction between "judicial" and "administrative" actions, government appellate counsel contend that the pretrial agreement related only to the convening authority's judicial action; and he was left perfectly free by that agreement to exercise his "administrative" discretion to decide whether to retain the accused in an intermediate pay grade. The argument continues that, because the convening authority failed specifically to address automatic reduction in acting on the case, the result under § 0118 of the JAGMAN was automatic reduction of the accused to the lowest enlisted pay grade.

■ We agree with the Government that a clear line exists between a sentence imposed by the military judge or court members and the possible administrative consequences of that sentence. However, we have recognized that there may be occasions when the providence of a guilty plea is affected by the accused's misunderstanding of collateral administrative consequences of a conviction. *See United States v. Bedania*, 12 M.J. 373, 376 (C.M.A. 1982). Moreover, we perceive no reason why a convening authority is precluded from obligating himself in a pretrial agreement concerning a court-martial to take prescribed administrative action for the accused's benefit, so long as that action is within the convening authority's power.

■ Since a convening authority is permitted by § 0118a(2) of the JAGMAN to retain an accused in an intermediate pay grade and suspend the automatic reduction, the convening authority was empowered to suspend Cabral's automatic reduction to E–1 if he chose to do so. Therefore, as

part of a plea bargain, the convening authority could agree that he would make such a choice if the court-martial adjudged a sentence which, upon approval, would trigger an automatic reduction.

The question, then, is whether the convening authority made such a commitment when he agreed before trial that he would approve a reduction "as adjudged" by the court-martial. The Government insists that this language did not guarantee Cabral that the convening authority would do anything more than approve the sentence adjudged. Appellate defense counsel reply that the convening authority committed himself to take action after trial to retain Cabral in the same grade to which the trial judge reduced him.

■ In reviewing the pretrial agreement with the accused, the military judge was not obligated to explain administrative consequences of a conviction or of a particular sentence or to inquire about the accused's understanding of those consequences. *Cf. United States v. Miles,* 12 M.J. 377 (C.M.A. 1982); *United States v. Bedania, supra.* However, there certainly "is nothing amiss" in the judge's undertaking such explanation or inquiry. *United States v. Miles, supra* at 379. In this case, it is unclear whether, by his comment that "the Convening Authority is free to approve reduction in rate to pay grade E–3," the military judge intended only to describe what sentence to reduction the convening authority could approve as a "judicial" act or instead was interpreting the pretrial agreement to require a "bottom line" result that the accused would be reduced to no lower than pay grade E–3 after the convening authority had finished acting on the case.

The language of the convening authority's action does not clarify the original intent of the parties to the pretrial agreement. Clearly his action does not follow the forms prescribed as "guides" for use in suspending an automatic reduction. At first blush, it would seem that, if the convening authority intended for the automat-

ic reduction to take place, he would have had no reason to make an administrative determination "that the reduction to pay grade E–3 is to the rate of Machinist's Mate Fireman." However, there is language in the JAGMAN which might indicate that such a determination must be made by the convening authority, even if he is not suspending the automatic reduction. Section 0118b.

■ In view of the seemingly impenetrable ambiguity in the pretrial agreement, what solution should be reached? We recognize that the proposal for a pretrial agreement originated with the accused and his counsel. However, this circumstance is not decisive; and in several instances the Government has borne the consequences of omissions in pretrial agreements. *Cf. United States v. Dawson,* 10 M.J. 142 (C.M.A.1981).

For several reasons we are persuaded that here the ambiguity should be resolved in favor of the accused. *See United States v. Cox,* 22 U.S.C.M.A. 69, 46 C.M.R. 69 (1972). The first is that, for anyone unfamiliar with the history of automatic reduction and the technical distinction between "judicial" and "administrative" action, the words "as adjudged" in the pretrial agreement would be construed to mean that, after the convening authority had acted, the result of his action would be that the accused would serve in the grade to which he had been sentenced by the court-martial.

Second, as we were informed at oral argument and have subsequently verified, automatic reduction is a comparatively recent phenomenon in the Navy; and at the time of the pretrial agreement it was quite likely that the parties would not have considered specifically the effects of automatic reduction on the terms of the agreement.

Third, trial counsel in his argument on sentence, after requesting the military judge to consider adjudging a bad-conduct discharge and confinement for 90 days, added: "We would ask further for reduction from E–5 to E–4 or E–3. We believe

that based on his prior service, the accused, if retained should not be reduced all the way to E–1. He has assets. He has experience that could be valuable in pay grade E–3 to E–4." Presumably trial counsel's comments conformed to the views of the convening authority. Since that officer already had agreed to suspend any discharge that might be adjudged, there would have been no reason for the prosecutor to suggest that the judge only reduce Cabral to E–3 or E–4 if the convening authority intended that an automatic reduction to E–1 take effect.

Fourth, since there was ambiguity in the pretrial agreement, the officer exercising general court-martial jurisdiction could have sought clarification from the convening authority; and, since he failed to do so, the ambiguity should be resolved against the Government.[4]

---

4. On the other hand, defense counsel—by his failure to submit a *Goode* response and otherwise—seems almost to have acquiesced in the Government's interpretation of the pretrial

■ Finally, we believe it important, as a matter of public policy, that a pretrial agreement in a criminal case should not be interpreted in such a way that the Government will appear to have overreached and used a technicality to deprive the accused of the benefit of his bargain.

### IV

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed as to findings and as to so much of the sentence which includes a bad-conduct discharge, confinement for 90 days, and reduction to pay grade E–3. No automatic reduction to pay grade E–1 may be effected based on the sentence adjudged in this case.

Judge COX concurs.

Judge FLETCHER did not participate.