UNITED STATES, Appellee,

v.

Specialist Four Robert T. COPENING, 229–06–1929, United States Army, Appellant.

ACMR 8702406.

U.S. Army Court of Military Review.

13 Dec. 1990.

---

* Judge James Kucera took final action on this case prior to his retirement.

For Appellant: Captain Alan M. Boyd, JAGC, Captain Robin N. Swope, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC (on brief).

Before the Court sitting En Banc.

## OPINION OF THE COURT ON RECONSIDERATION

De GIULIO, Senior Judge:

Contrary to his pleas, the appellant was convicted by a military judge sitting as a general court-martial of larceny in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921 (1982) [hereinafter UCMJ]. He was sentenced to a bad-conduct discharge, confinement for four months, total forfeitures, and reduction to Private E1.

Appellant was charged with one specification of larceny of a gold chain. At trial on 11 September 1987, civilian defense counsel moved to exclude the admission of the gold chain on the basis that there was lack of probable cause to seize it. After hearing evidence the military judge, Judge Casida, granted the motion stating, "It pains me to do this. I find nothing more despicable than a barracks thief, Specialist Copening." Since the government's case hinged on this evidence, Judge Casida provided the government the opportunity to consider whether it wished to appeal his determination under Article 62, UCMJ, 10 U.S.C. § 862. The trial counsel asked for a continuance.

Later the same day, Judge Casida, believing that the case was over as a practical matter, had a "Bridging the Gap"[1] discus-

---

1. The US Army Trial Judiciary Standard Operating Procedure encourages military judges to conduct a "Post-trial Critique" one-on-one with counsel "after trial" to improve trial skills. Although laudable from the perspective of improved trial advocacy, the "Bridging the Gap"

sion concerning the case with trial counsel. The defense counsel was not present. The discussion concerned presentation of evidence and motion practice. Subsequently, trial counsel requested reconsideration of the ruling on the suppression motion to permit the government to present additional evidence omitted through inadvertence. Judge Casida recused himself based upon his statement to the appellant when suppressing the evidence at trial and upon the fact that after the hearing he "[d]iscussed with trial counsel other possible theories of admissibility of the evidence suppressed at that hearing." In his recusal memorandum, he further stated, "My 'coaching' might be construed as the basis for the request for reconsideration." Another military judge, Judge Neurauter, was detailed and granted the request for reconsideration. He announced he would consider the motion to suppress *de novo*. At this hearing, trial counsel presented three theories for a valid search: probable cause, consent, and the good faith exception. After hearing evidence Judge Neurauter denied the motion, finding the appellant had consented to the search.

Before this court, appellant requested that the findings and sentence be set aside and the charge dismissed, alleging that:

THE MILITARY JUDGE VIOLATED HIS DUTY TO MAINTAIN IMPARTIALITY WHEN, WHILE STILL PRESIDING OVER THE CASE, HE PROVIDED THE GOVERNMENT WITH THE THEORY OF ADMISSIBILITY OF CRITICAL EVIDENCE ON WHICH THE GOVERNMENT WAS ULTIMATELY SUCCESSFUL.

On 23 June 1989, this court set aside the findings and sentence and dismissed the charges. *United States v. Copening*, ACMR 8702406, (A.C.M.R. 23 June 1989) (unpub.). Pursuant to a government request, on 18 September 1989, this court granted a Petition for Reconsideration *En Banc* and vacated the court decision. On 12 October 1989, this court sitting *En Banc* ordered a hearing pursuant to *United States v. DuBay*, 37 CMR 411 (C.M.A. 1967), to obtain evidence on specified issues. That hearing was conducted on 7 December 1989. The specified issues and military judge's findings of fact and conclusions of law are attached as an appendix to this opinion.

In the most recent assignment of error, and especially because of the findings of fact arising out of the *DuBay* hearing which indicates that Judge Casida and counsel did not discuss the specifics of the case, the appellant now requests dismissal because of the appearance of impropriety, alleging that:

THE MILITARY JUDGE VIOLATED HIS DUTY TO MAINTAIN IMPARTIALITY WHEN, WHILE STILL PRESIDING OVER THE CASE, HE HAD AN *EX PARTE* CONVERSATION WITH TRIAL COUNSEL CONCERNING THE ADMISSIBILITY OF CRUCIAL EVIDENCE.

We find no prejudice to the appellant because of Judge Casida's conduct and affirm.

Appellant contends that Judge Casida violated Canons 1 and 3 A(4) of the American Bar Association Code of Judicial Conduct which provide, respectively, that a judge should observe the highest standards of conduct so that the integrity and independence of the judiciary may be preserved and that a judge should never initiate or

---

program may need reevaluation in light of increased attention to judicial ethics because of recent amendments to the UCMJ. Discussions by trial judges of legal issues that may come before them in future cases; discussions *ex parte* with counsel of any party to a trial; and, discussions with counsel before the trial is final about rulings in the case may all be more strictly limited by a new code of judicial ethics modeled on the ABA's Model Code of Judicial Ethics. In any event, even under the current guidance on the conduct of "Bridging the Gap" ses-

sions, a determination of "after trial" is difficult in light of the potential for remands, *DuBay* hearings, and recent Court of Military Appeals decisions concerning a military judge's authority to conduct Article 39(a), UCMJ, sessions after trial and before authentication of the record. *See United States v. Scaff*, 29 M.J. 60 (C.M.A. 1989) and cases cited therein. Military judges are urged to exercise caution in "Bridging the Gap" sessions to avoid potential ethical lapses. Such sessions should never be conducted *ex parte* for reasons manifested by the instant case.

consider *ex parte* communications concerning a pending proceeding. Appellant also alleges that Judge Casida violated his obligation to faithfully administer justice with impartiality and independence as set forth in the Department of the Army Pamphlet 27–9, Military Judges' Benchbook, para 1–1(2)(a), (1 May 1982). Appellant contends that he was clearly prejudiced because the trial counsel was given the opportunity to consider what he had done wrong, consider what the military judge had told him *ex parte,* correct the problem, and litigate the motion again. He contends that Judge Casida's actions created an appearance of impropriety and caused a taint to the case which erodes confidence in the military justice system which can only be removed by dismissing the charges.

■ Army Regulation 27–1, Judge Advocate Legal Services, Chapter 7, (15 September 1989), gives the responsibility for processing allegations of violation of ethical standards to The Judge Advocate General and, in the case before us, the Chief Circuit Judge.[2] Although this court finds the actions of Judge Casida improper, we need not determine he violated the ethical standards, for even if he did, no direct prejudice to the appellant arose from the *ex parte* meeting.[3] *Ex parte* communications between counsel and a judge under circumstances which might give the appearance of granting undue advantage to one party cannot be condoned. *United States v. Wilkerson,* 1 M.J. 56, 57 n. 1 (C.M.A.1975). Without condoning the actions of Judge Casida in this case, we find, however, that the *ex parte* communication must result in prejudice to an accused. *United States v. Adams,* 785 F.2d 917, 921 (11th Cir.1986),

*cert. denied,* 479 U.S. 1009, 107 S.Ct. 650, 93 L.Ed.2d 706 (1986). When a military judge's impartiality might reasonably be questioned in a case, or when he has a personal bias or prejudice concerning a party, he should disqualify himself. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 902(a) and (b) [hereinafter R.C.M.]. A disqualification under R.C.M. 902(b) cannot be waived. R.C.M. 902(e). In light of the military judge's intemperate remarks on the record and his *ex parte* communication with trial counsel, Judge Casida took proper action by recusing himself when he realized the proceedings were not terminated.

■ Subsequently, Judge Neurauter was detailed to preside in the case. On request of any party or *sua sponte,* a military judge may reconsider any ruling, other than one amounting to a finding of not guilty, made by the military judge. R.C.M. 905(f). Judge Neurauter announced he would consider the motion to suppress *de novo.* Whether it is termed reconsideration or consideration *de novo* is not significant. Judge Neurauter did no more than Judge Casida could have done had he not recused himself. It was in his sound discretion to reconsider the motion. A trial judge has inherent authority, not only to reconsider a ruling on matters properly before him, but also to take additional evidence in connection therewith. *Harrison v. United States,* 20 M.J. 55, 57 (C.M.A. 1985). Thus, we find no error in Judge Neurauter reconsidering Judge Casida's ruling on the motion to suppress, taking additional evidence, and hearing additional argument on the motion.

Article 59(a), Uniform Code of Military Justice, 10 U.S.C. § 859(a), requires a

---

**2.** Army Regulation 27–10, Military Justice, Chapter 16, Section III (22 December 1989), contains procedures for suspension of military judges.

**3.** We shall leave this determination to the responsible authorities under the Army regulation. We do note, however, that appellate government counsel has improperly attempted to place before us information of an investigation concerning this matter and its results in a footnote to their brief. It is also noted that appellate government counsel has attempted in the brief to place before this court affidavits, the

admittance of which were previously denied by this court. Rather than reject the brief as improper, in this case, we will ignore the matter which has been improperly brought before us. We have also noted emotional criticism of this court in the government brief concerning the refusal to admit the affidavits and this court's ordering of the *DuBay* hearing. Although we recognize that emotions are sometimes inevitable in hotly contested cases, even at the appellate level, we caution counsel to maintain the high standards of professionalism required in appellate practice.

showing of material prejudice before a conviction may be set aside for legal error. The hearing ordered by this court pursuant to *United States v. DuBay*, 37 CMR 411 (C.M.A.1967), revealed that Judge Casida did not provide the government with a theory of admissibility. The findings of the *DuBay* hearing convince us that his comments to the trial counsel had no impact upon the outcome of the proceedings. Consequently, we hold that Judge Casida's conduct did not prejudice appellant.

The findings of guilty and the sentence are affirmed.

Acting Chief Judge JOHNSON, Senior Judge FOREMAN, Senior Judge NAUGHTON, Judge CORRIGAN, Judge HAESSIG, Judge WERNER, Judge GRAY, Judge GRAVELLE, Judge VARO, and Judge JOHNSTON concur.

### APPENDIX

27 December 1989

United States

v.

Specialist Robert T. Copening

229–06–1429

United States Army.
FINDINGS OF FACT AND
CONCLUSIONS OF LAW

In accordance with the order of the U.S. Army Court of Military Review, a hearing pursuant to *United States v. DuBay* was conducted on 7 December 1989. The following findings of fact and conclusions of law are submitted:

I. FINDINGS OF FACT AND DISCUSSION:

1. WAS THE TRIAL COUNSEL PREPARED TO PRESENT MATTERS TO SUPPORT OTHER THEORIES OF ADMISSIBILITY AT THE TIME JUDGE CASIDA RULED THAT THERE WAS NO PROBABLE CAUSE FOR THE SEARCH IN QUESTION?

Yes. Prior to trial, the trial counsel had developed at least three theories of admissibility. These were: 1. Probable cause; 2. Consent; and, 3. Good faith exception to probable cause based on *LEON*. Witnesses to support all three approaches were present for The Trial and, in any event, would have necessarily been called as a foundation to offer the chain in evidence. The Trial counsel was completely inexperienced in contested cases and motion practice and embarrassed at the prospect of demonstrating his shortcomings. He expected—or at least hoped—that events would transpire to provide him the opportunity to present all theories of admissibility if necessary. He expected to win on his favored theory of probable cause and did not expect to need to argue the other theories, although he was prepared to do so.

It should be noted that this was a bench Trial with an anticipated "not guilty" plea regardless of the ruling on the motion. Although the Trial counsel was unaware of this fact, most judges would hear this as an objection to admissibility when offered during the case-in-chief. With more experience in motion practice under the current Manual for Courts–Martial, Judge Casida would probably have done so. In any event, the ruling on the motion in this case was, in effect, anticipatorily sustaining an objection to an expected offer of real evidence. Sustaining an objection to proffered evidence does not normally prevent the offering party from laying a further foundation and reoffering the evidence. Therefore, the Trial counsel's expectation that an adverse ruling on one theory of admissibility would allow him to reoffer the evidence under his other theories should have been—for reasons unbeknownst to him—correct.

2. WHY DID JUDGE CASIDA PROVIDE THE GOVERNMENT WITH AN OPPORTUNITY TO SEEK RELIEF UNDER ARTICLE 62, UNIFORM CODE OF MILITARY JUSTICE? DID HE BELIEVE THAT HIS RULING AS TO ADMISSIBILITY MIGHT BE OVERTURNED?

Judge Casida was confronted in court with an inexperienced prosecutor who had

unexpectedly received an adverse ruling and was totally at a loss as to what to do next. Upon being informed by the Trial counsel that continued prosecution of the case depended upon the evidence which had just been excluded, Judge Casida informed Trial counsel of his two alternatives in order to prompt some action to terminate the proceedings gracefully. He was convinced that his ruling on probable cause would be upheld if appealed. He was unaware of any basis other than probable cause to support the search. Had he been aware of the availability of evidence on consent, he could easily and properly asked for the evidence to be presented as the finder of fact in a bench Trial.

3. WHY DID JUDGE CASIDA RECUSE HIMSELF FROM THE CASE.

He recused himself for the reasons set forth in his notice of recusal: 1. his comments to the accused in court after his ruling on the evidence; and, 2. his *ex parte* conversation with the Trial counsel. At the time both of these events occurred, Judge Casida was convinced that the case was, as a practical matter, over. He had not consciously addressed the fact that charges had not been formally disposed of and weighed the propriety of his actions in that light. The impropriety of his statements and conversation dawned on him during the *ex parte* conversation when he became aware that there might be a basis for admitting the evidence other than probable cause and realized that his assumption that the case was over may have been incorrect.

4. WHY DID JUDGE CASIDA ENTER INTO AN *EX PARTE* CONVERSATION WITH THE TRIAL COUNSEL.

He entered into the conversation with the premise that the case was over. He had not properly considered the actual status of the case and did not think of it as an *ex parte* conversation until he realized that the case might still have vitality. His motive for the conversation was to obtain information to complete his post-trial judge's report and to conduct a post-trial "Bridging the Gap" session.

5. WHAT WAS SAID DURING THE *EX PARTE* CONVERSATION BETWEEN JUDGE CASIDA AND THE TRIAL COUNSEL? IF JUDGE CASIDA WAS TOLD, OR UNDERSTOOD, THAT THE CHARGES HAD NOT BEEN DISMISSED, WHY DID HE CONTINUE HIS *EX PARTE* CONVERSATION?

During the *ex parte* conversation, Judge Casida asked if the government had decided whether to appeal. The Trial Counsel informed the judge that the decision had not yet been made. Although informed that no decision on appeal had been made, Judge Casida still acted under the assumption that his ruling was dispositive of the case, that his ruling was unassailable on appeal, and consequently that the case was, in fact, over. Therefore, without consciously addressing the propriety of continuing the conversation in a case that was not "technically" final, he continued the conversation. Judge Casida then conducted a "Bridging the Gap" session with the Trial counsel and discussed how to litigate motions with him. During this discussion the Trial counsel informed the judge that he had had evidence available to present on other theories of admissibility. At some time after this revelation, very possibly, after some additional counseling, it suddenly dawned on Judge Casida that his assumption that the case was over might be incorrect. At that point, he recognized the impropriety of the conversation and terminated it.

6. TO WHAT EXTENT, IF ANY, DID THE STATEMENT BY JUDGE CASIDA IN GRANTING THE MOTION TO SUPPRESS ON 11 SEPTEMBER 1987, TO WIT: "IT PAINS ME TO DO THIS. I FIND NOTHING MORE DESPICABLE THAN A BARRACKS THIEF ..." IMPACT ON:

A. HIS ENTERING INTO THE *EX PARTE* CONVERSATION; AND/OR

B. MATTERS DISCUSSED IN THE *EX PARTE* CONVERSATION.

Judge Casida's statement had no impact on the *ex parte* conversation whatsoever. His quoted remarks were intended to impress on the accused that his impending release without a trial on the merits should not be considered as a condonation of the offense. The remarks were also prompted in part by some professional frustration—not personal frustration—that a case was being decided on some basis other than its factual merits. The remarks resulted from and were compatible with his belief that the case was over. His motives for entering into the *ex parte* conversation and the matters discussed therein were as stated in my answers to questions 4 and 5 preceding, and were unrelated to the quoted statement to the accused.

7. WHAT WAS DISCUSSED ABOUT THIS CASE IN ANY CONVERSATIONS BETWEEN THE TRIAL COUNSEL AND THE STAFF JUDGE ADVOCATE AND/OR THE CHIEF OF MILITARY JUSTICE *AFTER* JUDGE CASIDA'S SUPPRESSION RULING, BUT *PRIOR TO* THE *EX PARTE* CONVERSATION BETWEEN THE TRIAL COUNSEL AND JUDGE CASIDA?

During this interval, the Trial counsel told the Chief of Military Justice what had occurred in court. The Chief of Military Justice told the Trial counsel that the military judge should be informed that the government had more evidence to present. The Chief of Military Justice and the Trial counsel reported what had happened to the Staff Judge Advocate and the Deputy. The Trial counsel was counselled at length about his errors in presentation and what he should do in future cases. The four parties discussed possible remedies. A decision was made and stated by the Staff Judge Advocate to attempt to find some means to revive or continue the prosecution by government appeal or otherwise. A decision was reached to call the Trial Counsel Assistance Program to discuss possible remedies including a government appeal, and a phone call to TCAP was booked with the operator.

8. WHAT WAS DISCUSSED ABOUT THIS CASE IN ANY CONVERSATIONS BETWEEN THE TRIAL COUNSEL AND THE STAFF JUDGE ADVOCATE AND/OR THE CHIEF OF MILITARY JUSTICE *AFTER* THE *EX PARTE* DISCUSSION, BUT *PRIOR* TO RECONVENING THE COURT–MARTIAL ON 28 OCTOBER 1987?

During this interval, their conversations related to preparation and execution of a request for reconsideration pursuant to TCAP advice and a possible Article 62 appeal. The primary discussion was between the Trial counsel and the *Deputy* Staff Judge Advocate.

9. WHAT WAS THE IMPETUS FOR THE TRIAL COUNSEL TO MAKE THE REQUEST FOR RECONSIDERATION TO JUDGE NEURAUTER?

The request for reconsideration was forwarded to Judge Neurauter after he was assigned to replace Judge Casida on the case. It had originally been served on Judge Casida on 12 September 1987. The impetus for Trial counsel's pursuing this request before Judge Neurauter was the decision of the Staff Judge Advocate to pursue the case and the advice from TCAP to request reconsideration. The request for reconsideration was not prompted by the Trial counsel's *ex parte* conversation with Judge Casida.

10. DID JUDGE NEURAUTER RECEIVE INFORMATION FROM JUDGE CASIDA OR FROM ANY OTHER SOURCE, REGARDING THE EVIDENTIARY ISSUE IN QUESTION PRIOR TO BEING DETAILED TO THE CASE OR PRIOR TO RECONVENING THE COURT–MARTIAL AFTER SUCH DETAIL? IF SO, WHAT WAS THE INFORMATION AND FROM WHOM WAS IT RECEIVED?

Judge Neurauter received no information about the issue prior to being detailed.

After being detailed and prior to reconvening, Judge Neurauter read the record of trial from the initial proceedings and Judge Casida's notice of recusal. Also, Judge Casida informed him in a telephone conversation that he had suppressed evidence offered by the government on a probable cause search theory, and that the government apparently had other theories of admissibility that it wished to pursue. Judge Neurauter had no other information relating to the evidentiary issue prior to reconvening.

11. AFTER RECUSAL AND PRIOR TO THE COURT–MARTIAL BEING RECONVENED ON 28 OCTOBER 1987, WHAT, IF ANYTHING, WAS DISCUSSED BETWEEN JUDGE CASIDA AND JUDGE NEURAUTER WITH REGARD TO:

A. THE REASON FOR RECUSAL; AND

B. LEGAL OR FACTUAL MATTERS SURROUNDING THE EVIDENTIARY ISSUES IN THE CASE.

a. Judge Casida informed Judge Neurauter that he was recusing himself because of remarks that he had made on the record and because he had had an *ex parte* conversation with the Trial counsel after his ruling. He also stated that he was sending Judge Neurauter a written notice of recusal which is now a part of the record of trial.

b. The legal and factual matters surrounding the evidentiary issues in the case were not discussed between the judges.

12. WHY DID JUDGE NEURAUTER CONSIDER THE EVIDENTIARY MATTERS IN QUESTION *DE NOVO* RATHER THAN AS A RECONSIDERATION OF THE DETERMINATION BY JUDGE CASIDA? WHY DID HE OVERRULE THE DEFENSE OBJECTION TO HIS *DE NOVO* CONSIDERATION?

Judge Neurauter determined that it was within his discretion under R.C.M. 905 f., to hear additional evidence. He decided that the Trial counsel had originally made a mistake but that there was no bad faith involved and no unfairness in litigating the case on its merits. It was for these reasons that he overruled the defense objection.

II. CONCLUSIONS OF LAW:

1. Although not improperly motivated, Judge Casida's remarks in court regarding the despicability of a barracks thief were ill-chosen and inappropriate regardless of the status of the case, and necessitated his recusal.

2. As recognized by Judge Casida, his *ex parte* conversation with the Trial counsel was improper. Although it resulted from an assumption that the case was over, rather than a conscious decision to hold the conversation at that stage of the proceedings, it necessitated his recusal.

3. It was within Judge Neurauter's discretion to reconsider the earlier ruling by Judge Casida under R.C.M. 905f. Although heard as a motion *in limine*, Judge Casida's original ruling amounted, in effect, to sustaining an objection to an offer of evidence. His ruling was correct based on the evidence previously presented. Nothing in law or fairness precludes a reoffer of evidence previously rejected after the introduction of additional supporting testimony. Since Judge Casida's improprieties were remedied by his recusal, and did not prompt the request for reconsideration or the ruling thereon, Judge Neurauter's decision was free from taint.

/s/ Richard P. Scheff
RICHARD P. SCHEFF
Colonel, JA
Military Judge