UNITED STATES, Appellee,

v.

**Robert T. COPENING, Specialist Four, U.S. Army, Appellant.**

No. 66,234.
CM 8702406.

U.S. Court of Military Appeals.

Argued Oct. 4, 1991.

Decided Jan. 27, 1992.

For Appellant: *Captain Robin N. Swope* (argued); *Lieutenant Colonel Russell S. Estey* and *Captain Alan M. Boyd* (on brief).

For Appellee: *Lieutenant Colonel Daniel J. Dell'Orto* (argued); *Colonel Alfred F. Arquilla* (on brief).

*Opinion of the Court*

COX, Judge:

Appellant claims that he was prejudiced by an *ex parte* conversation between the military judge and trial counsel while appellant's case was still pending at trial. For reasons set forth below, we reject appellant's claim and affirm the decision of the Court of Military Review.

Contrary to his pleas, appellant was convicted by a military judge sitting as a general court-martial of one specification of larceny, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. He was sentenced to a bad-conduct discharge, confinement for 4 months, total forfeitures, and reduction to E–1. The convening authority approved the sentence.

Appellant was charged with stealing a gold necklace from a fellow soldier. At trial, defense counsel moved to exclude the necklace based on lack of probable cause to apprehend and search appellant. The military judge, Judge Casida, found no probable cause and ruled that the evidence would be excluded. In so ruling, Judge Casida stated, "It pains me to do this. I find nothing more despicable than a barracks thief, Specialist Copening." Judge Casida then granted the Government a continuance for purposes of appeal.

■ Later that day, Judge Casida coached the inexperienced trial counsel on motions practice and on possible theories of admissibility in a "Bridging the Gap" discussion.* During this conversation, Judge Casida learned that the case was not over as he had thought. Instead, trial counsel indicated that he had other theories of admissibility, as yet unpresented. Subsequent to this conversation, the Government filed a motion for reconsideration of the ruling on admissibility of the necklace.

Judge Casida recused himself from the case because of his *ex parte* communications with trial counsel and because of his statement to the accused upon finding the evidence inadmissible. Judge Neurauter replaced Judge Casida and reconsidered the motion to suppress *de novo*. The Government argued the search was valid based on probable cause, consent, or the good-faith exception. Judge Neurauter admitted the

necklace based on consent and, subsequently, convicted appellant of larceny.

■ Appellant seeks relief on two theories. First, appellant claims he was prejudiced because trial counsel was given the opportunity to consider what he had done wrong, consider what Judge Casida had told him in the *ex parte* meeting, correct any problems, and litigate the motion again. Second, appellant argues that the appearance of impropriety created by the *ex parte* conversation generates the perception that the judiciary and the Government acted in concert. This "taint" on the proceedings is the prejudice suffered by appellant, which he argues can be removed only by dismissing the charge.

On appeal, the Court of Military Review set aside the findings and sentence, and dismissed the charge on June 23, 1989. The court also denied the Government's request for reconsideration on July 21, 1989. The Government then requested reconsideration *en banc*. The Court of Military Review on October 12, 1989, ordered a hearing pursuant to *United States v. DuBay*, 17 USCMA 147, 37 CMR 412 (1967), to address specific questions. *See* 32 MJ 512, 516–19 (1990). Following the hearing, the Court of Military Review, sitting *en banc*, affirmed the findings and the sentence. 32 MJ 512. This Court granted review of the following issue:

WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED BY HOLDING, AFTER FINDING THAT THE MILITARY JUDGE HEARING APPELLANT'S CASE HAD AN IMPROPER *EX PARTE* CONVERSATION WITH THE TRIAL COUNSEL IN APPELLANT'S CASE, THAT APPELLANT MUST SHOW ACTUAL PREJUDICE BEFORE THE FINDINGS AND SENTENCE CAN BE SET ASIDE.

---

* Military judges conduct post-trial critiques with both trial and defense counsel for the purpose of improving trial skills, as encouraged by the United States Army Trial Judiciary Standard Operating Procedure. To avoid future problems, we strongly recommend that military judges not conduct "Bridging the Gap" discussions when there is any possibility of future action in a case. We also recommend that *both* counsel be present during these sessions. *See* 32 MJ 512, 513 n. 1 (ACMR 1990).

Article 59(a) of the Uniform Code of Military Justice, 10 USC § 859(a), provides that "[a] finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." This Court has made it abundantly clear that *ex parte* communications between counsel and a judge will not be condoned. *United States v. Wilkerson,* 1 MJ 56, 57 n. 1 (C.M.A.1975). Absent manifest unfairness, however, charges are neither dismissed, nor reversal granted, for such error. *See, e.g., United States v. Adams,* 785 F.2d 917, 921 (11th Cir.), *cert. denied,* 479 U.S. 1009, 107 S.Ct. 650, 93 L.Ed.2d 706 (1986); *United States v. Walsh,* 700 F.2d 846, 858 (2d Cir.), *cert. denied,* 464 U.S. 825, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983); *Greico v. Meachum,* 533 F.2d 713, 719 (1st Cir.), *cert.' denied,* 429 U.S. 858, 97 S.Ct. 158, 50 L.Ed.2d 135 (1976); *United States v. Chavira,* 25 MJ 705, 708 (ACMR 1987); *cf. United States v. Dean,* 13 MJ 676 (AFCMR 1982).

The Court of Military Review found, after reviewing the results of the extensive *DuBay* hearing, that: (1) trial counsel was "prepared to present ... other theories of admissibility at the time Judge Casida ruled ... no probable cause [existed] for the search"; (2) Judge Casida believed "the case was over" when "[h]e entered into the conversation" with trial counsel; (3) the request for reconsideration was the staff judge advocate's decision, upon advice from the Trial Counsel Assistance Program, and "was not prompted by the ... *ex parte*" communication; (4) "legal and factual matters surrounding the evidentiary issues in the case were not discussed" between Judges Casida and Neurauter; (5) Judge Casida's improprieties were remedied by his recusal; and (6) Judge Neurauter's decision was free from taint. 32 MJ at 516–19.

The Court of Military Review made an outstanding effort to establish the facts and determine the impact of Judge Casida's actions on the results in this case. The *DuBay* hearing showed that Judge Casida did not provide the Government with the theory of admissibility and that his comments had no impact upon the outcome of the proceedings. Sufficient evidence exists in the record to support the court's finding that any taint or prejudice was removed by Judge Casida's recusal. Thus, the decision of the Court of Military Review was not erroneous.

The decision of the United States Army Court of Military Review is affirmed.

Judges CRAWFORD, GIERKE, and WISS did not participate.

SULLIVAN, Chief Judge (concurring):

I agree with my Brother, Judge Cox, that the proceeding under *United States v. Du-Bay,* 17 USCMA 147, 37 CMR 411 (1967), has dispelled any suggestion of prejudice in this case. I write separately, however, to emphasize that the so-called "Bridging the Gap Program" should not have been utilized where a continuance had been granted. Moreover, I have attached as an appendix to this opinion pertinent portions of the regulations governing this program. They raise a question in my mind whether *ex parte* conversations concerning motion grants or denials are a proper part of it. *See* Ch. 10, U.S. Army Trial Judiciary Memo 89-1 (Trial Judiciary Standard Operating Procedure dated 16 February 1989) (filed by parties after oral argument). I join Judge Cox' words of caution concerning this practice.

APPENDIX

Chapter 10

*Counsel Training*

1. Under the Bridging the Gap Program military judges are responsible for providing orientation and guidance to counsel concerning court-martial practices and procedures.

2. *Purpose.* The Bridging the Gap Program provides basic information and guidance concerning court-martial practices and procedures to newly assigned trial counsel and defense counsel with special attention

to those with limited trial experience. While inexperienced counsel are given special emphasis, all military counsel are covered. Those who are relatively experienced in courts-martial also need information about local practices and procedures, such as the local Rules of Court and the trial script (boilerplate) in use at the particular installation.

3. *Goals.* The program has two principal goals:

a. To enhance the quality of advocacy in courts-martial by providing useful orientation to newly assigned trial and defense counsel;

b. To promote the most effective and efficient use of judicial resources. As the first of these goals recognizes, trial judges have a professional responsibility to set high standards of advocacy within their jurisdictions and to take a hand in teaching counsel, especially inexperienced counsel, to be effective advocates. Underlying the second goal is a recognition that competent, well-trained advocates will help to ensure a judicial system that operates in an equitable, efficient manner.

4. *Specific Objectives.* To meet these goals, the program must accomplish five specific objectives:

a. Provide information and guidance concerning local practices and procedures;

b. Review trial and defense counsel duties with each counsel;

c. Identify special problem areas to avoid, such as ex parte discussions;

d. Provide practical advice in areas of practice and procedure in which counsel are traditionally weak, such as laying a proper foundation for the introduction of certain evidence;

e. Spotlight other specific problems of practice or procedure when they arise.

5. *Responsibilities.*

a. The Chief Trial Judge will develop the program and will supervise, monitor and coordinate its implementation in the field.

b. Chief Circuit Judges will supervise, monitor and coordinate the program within their respective circuits.

c. Individual Trial Judges will:

(1) Conduct the program at those installations which they support. If an installation has two resident judges, the senior resident judge will assign program responsibilities with the approval of the Chief Circuit Judge.

(2) Meet with each newly assigned trial or defense counsel within 30 days of his or her assignment, or prior to the counsel's first court appearance, whichever occurs first, to discuss local practices and procedures and specific counsel duties of importance.

d. Trial judges are encouraged to critique inexperienced counsel after each of their first few trials as lead counsel until the judge concludes that no further critique is needed.

e. Assigning responsibilities in this manner serves several purposes. First, it allows centralized development where it can best be accomplished, that is, at the Office of the Chief Trial Judge. Secondly, it provides decentralized operation, thereby ensuring judiciary contact at the earliest stage of a counsel's trial advocacy experience. Thirdly, Trial Judges are given discretion to decide when critique is needed. Finally, there are no required reports. However, the Chief Trial Judge will monitor the program's operation closely and will review progress with Chief Circuit Judges at future conferences. It is recommended that each judge keep a personal log of orientation sessions and critiques which records names and dates.

6. *Gateway Sessions.* At the heart of the program are the initial sessions judges must conduct with counsel. These can be small-group or individual meetings, preferably held either in the judge's private office or in the courtroom. At installations with no resident judge, the responsible judge should hold sessions during a TDY visit for trials. If necessary, the judge can make a special TDY trip to conduct orientation. It

is important, however, that the orientation be completed before a counsel's first courtroom appearance. At these sessions the judge should hand out copies of the local Rules of Court and the trial script and should then review these handouts in detail with the counsel. Other handouts might include sample documents such as findings and sentence worksheets and examples of the proper wording of a plea by exceptions and substitutions. Enclosure 1 contains a list of subjects which judges are expected to cover. This list is not intended to be all-inclusive. Individual judges should add other subjects based on their perception of local problem areas.

7. *Post-trial Critiques.* Counsel critiques will generally be informal, one-on-one sessions held immediately after a trial. At these meetings the judge should assess the strengths and weaknesses of the counsel's performance in the case, and provide positive, constructive guidance. Judges are encouraged to use this method with inexperienced counsel following each of their first few cases as lead counsel. Thereafter, they are encouraged to continue the practice at their discretion when needed or requested. For more experienced counsel, the Trial Judge should provide critique when requested or when the judge thinks it appropriate. Again, the content of these brief sessions will be determined by each judge individually.

8. Trial Judges should also consider using regular docket sessions and scheduled CLE sessions to provide orientation for new counsel and to address recurring problems. Obviously, any such references at regular docket sessions must be brief and to the point. When invited, Trial Judges are encouraged to participate in installation SJA, TCAP, and TDS training sessions.

EVERETT, Senior Judge (concurring):

Several years ago the Judge Advocate General of the Army initiated the innovative "Bridging the Gap Program," whereunder, after a trial has ended, the military judge provides a critique to trial and defense counsel. In this way trial skills of sometimes inexperienced lawyers can be more rapidly enhanced.

In this case, the judge's failure to recognize that the trial might not be over has caused some problems on appeal. However, I hope that the Army will not overreact, substantially curtail the program, and thereby "throw out the baby with the bathwater." Instead, some minor adjustments—as recommended by Judge Cox—should suffice to solve any foreseeable problems in "Bridging the Gap." Moreover, I am willing to leave to the discretion of the Army's able military judges whether to have both counsel present when the post-trial critiques are presented. Often a much more valuable appraisal of tactics and skills can be provided in a one-on-one session. Of course, pedagogical benefits must yield if the judge suspects that private discussions with a counsel may engender a perception of favoritism or bias.