UNITED STATES, Appellee,

v.

Private E2 Eric M. McNUTT, United
States Army, Appellant.

ARMY 20020022.

U.S. Army Court of Criminal Appeals.

7 Nov. 2003.

**630**

For Appellant: Lieutenant Colonel E. Allen Chandler, Jr., JA; Major Imogene M. Jamison, JA; Captain Terri J. Erisman, JA (on brief).

For Appellee: Colonel Lauren B. Leeker, JA; Lieutenant Colonel Margaret B. Baines, JA; Major Mark L. Johnson, JA; Captain Tami L. Dillahunt, JA (on brief).

Before HARVEY, Senior Judge, BARTO, and SCHENCK, Appellate Military Judges.

## OPINION OF THE COURT

BARTO, Judge:

A military judge sitting as a special court-martial found appellant guilty, pursuant to his pleas, of desertion and absence without leave, in violation of Articles 85 and 86, Uniform Code of Military Justice, 10 U.S.C. §§ 885 and 886 [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for seventy days, forfeiture of $500 pay per month for three months, and reduction to Private E1.

This case is before the court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866. In his only assignment of error, appellant asserts that the military judge erred by considering a collateral administrative matter not in evidence when deliberating upon sentence. We disagree, but the assertion raises issues that are important to the administration of military justice and warrant discussion.

## FACTS

After sentence was adjudged, appellant submitted matters to the convening authority pursuant to the provisions of Rule for Courts–Martial [hereinafter R.C.M.] 1105. In these matters, trial defense counsel stated the following:

After the guilty plea, the military judge informed the trial counsel ... and me that the reason he sentenced PVT [Private] McNutt to 70 days was because he knew PVT McNutt would receive 10 days of "good time" credit, and that he wanted to be sure that PVT McNutt served 60 actual days [of confinement].

Trial defense counsel further asserted that the military judge inappropriately considered "collateral issues such as good time credit," and requested that the convening authority "approve only 60 days of the adjudged 70 days of confinement." In his addendum to the staff judge advocate's (SJA) recommendation (SJAR), the acting SJA disagreed with trial defense counsel's assertion of legal error but did not dispute or contradict its underlying factual assertions. The convening authority approved the adjudged sentence.

## LAW

Appellant may impeach his court-martial sentence "only when extraneous prejudicial information was improperly brought to the attention of a member, outside influence was improperly brought to bear upon any member, or unlawful command influence was brought to bear upon any member." R.C.M. 1008. Appellant may rely upon any competent, relevant, and admissible evidence to establish that extraneous information or improper influence was injected into the deliberative process, including the testimony of a member of the court-martial. *See* Military Rule of Evidence [hereinafter Mil. R. Evid.] 606(b). However, members remain testimonially incompetent,

as to any matter or statement occurring during the course of the deliberations of the members of the court-martial or, to the effect of anything upon the member's or any other member's mind or emotions as influencing the member to assent or dissent from the findings or sentence or concerning the member's mental process in connection therewith ....

*Id.; see United States v. Straight,* 42 M.J. 244, 251 (C.A.A.F.1995); *cf.* Mil. R. Evid. 509 (creating limited privilege for deliberations of courts-martial). These rules also apply to

"post-trial inquiries into the basis of a sentence adjudged by a military judge." *United States v. Gonzalez,* 42 M.J. 373, 374 (C.A.A.F.1995); *see United States v. Rice,* 25 M.J. 35, 38 (C.M.A.1987); *cf. Proffitt v. Wainwright,* 685 F.2d 1227, 1255 (11th Cir. 1982) (holding that a reviewing court cannot consider trial judge's post-decision statements regarding mental processes in sentencing deliberations).

■ The term "extraneous prejudicial information," as used in R.C.M. 1008 and Mil. R. Evid. 606(b), is not expressly defined or explained in either of the applicable rules or controlling precedent. Our superior court has nevertheless observed that "evidence of information acquired by a court member during deliberations from a third party or from outside reference materials may be extraneous prejudicial information which is admissible under Mil. R. Evid. 606(b) to impeach the findings or sentence." *Straight,* 42 M.J. at 250; *cf. Johnson v. Agoncillo,* 183 Wis.2d 143, 515 N.W.2d 508, 516 (1994) ("Information is 'extraneous' when it 'is both not of record and beyond the jurors' general knowledge and accumulated life experiences.'" (citation omitted)). Similarly, "[t]here may be instances in which a court member's personal knowledge may constitute extraneous prejudicial information, as where the member has 'personal knowledge regarding the parties or the issues involved in the litigation,'" or "a member purported to speak authoritatively as an expert" to fellow members on an issue before the court. *Straight,* 42 M.J. at 250 (citation omitted). *But cf. United States v. Johnson,* 23 M.J. 327, 328–29 (C.M.A.1987) (holding member's affidavit concerning demonstration of martial arts weapon during deliberations was not competent evidence of extraneous prejudicial information).

However, "the general and common knowledge a court member brings to deliberations is an intrinsic part of the deliberative process, and evidence about that knowledge is not competent evidence to impeach the members' findings or sentence." *Straight,* 42 M.J. at 250. Indeed, the UCMJ envisions that members will bring their education, training, and experience to bear upon their deliberations. *See* UCMJ art. 25(d)(2), 10

U.S.C. § 825(d)(2). Military judges even instruct members in contested trials that they are "expected to use [their] own common sense, and [their] knowledge of human nature and the ways of the world" when "weighing and evaluating the evidence." Dep't of Army, Pam. 27–9, Legal Services: Military Judges' Benchbook, para. 8–3–11 (1 Apr. 2001). In practice, then, the line "between commonly-known facts and specialized or personal knowledge that jurors should not possess may be difficult to define with any degree of precision." *United States v. Witherspoon,* 12 M.J. 588, 590 (A.C.M.R.1981), *aff'd,* 16 M.J. 252 (C.M.A.1983); *cf. Virgin Islands v. Gereau,* 523 F.2d 140, 150 (3d Cir.1975) ("[I]t is not possible to abstract from the cases any neat and comprehensive list of grounds upon which a verdict may be overborne.").

**DISCUSSION**

■ Appellant asserts that the military judge erred during sentence deliberations by considering the Army policy of granting certain confinees five days of confinement credit per month during periods of good behavior. Citing *United States v. McLaren,* 34 M.J. 926, 934 (A.F.C.M.R.1992), appellant maintains that such administrative procedures are "collateral to the sentencing function" and should not be considered when determining an appropriate sentence in a specific case. During oral argument before this court, appellate defense counsel also asserted that such information about Army correctional policy was not within the "generalized common knowledge" of Army officers, or even military judges, and was instead more akin to the particularized knowledge of the expert. *Cf. Straight,* 42 M.J. at 250 (reserving the issue of whether a member purporting to "speak authoritatively as an expert" during deliberations would constitute extraneous prejudicial information).

Appellate government counsel do not deny that the military judge made the statements at issue, but instead contend that there is no competent evidence of the statements before this court. The government asserts that the "military judge's comments related directly to his deliberative process in

determining appellant's sentence," and therefore "the statements should not be considered in evaluating the correctness of appellant's sentence." Alternatively, we are urged to conclude that "the military judge drew on generalized common knowledge based on his experience as a judge advocate." Even if the military judge improperly considered such information, the government argues that this court may nonetheless affirm the sentence approved by the convening authority because it is appropriate under the circumstances.

■ We decline to adopt either appellant's or the government's suggested analytical framework for resolving this issue. As a threshold matter, this court may consider the military judge's uncontroverted statement "for the limited purpose of determining whether it suggests that extraneous prejudicial information was considered." *United States v. Combs*, 41 M.J. 400, 401 (C.A.A.F. 1995). If we ultimately conclude that the statement is competent evidence that the military judge improperly considered extraneous information, we do not then rely upon the statement or other evidence to determine the effect of the information upon the military judge. Instead, we will presume such information was prejudicial "to avoid inquiry into the thought processes of individual members," *Straight*, 42 M.J. at 250–51, or as in this case, the military judge.

■ The government may rebut this presumption of prejudice by " 'a clear and positive showing' " that the information " '*did not* and *could not* operate in any way to influence the court's decision.' " *United States v. Knight*, 41 M.J. 867, 870 (Army Ct.Crim.App.1995) (quoting *United States v. Gaston*, 45 C.M.R. 837, 838, 1972 WL 14310 (A.C.M.R.1972)). The government may not rely upon the testimony of the military judge or a member as to the actual effect the information had upon deliberations to rebut the presumption of prejudice. *See* Mil. R. Evid. 606(b). Proper rebuttal evidence should focus instead upon objective factors, such as: (1) the nature of the information considered, (2) the manner in which it was received, (3) the extent of its consideration, (4) its accuracy and admissibility, (5) the

stage of the proceedings in which it was considered, and (6) "whether it was reasonably likely to affect the verdict, considering the strength of the government's case and whether it outweighed any possible prejudice caused by the extrinsic evidence." *United States v. Swinton*, 75 F.3d 374, 382 (8th Cir.1996).

■ In determining a sentence in the present case, the military judge apparently relied upon the Army policy which provides that a prisoner sentenced at court-martial to one year or less of confinement will be credited with five days of confinement credit for each month of good conduct during the sentence. *See* Army Reg. 633–30, Apprehensions and Confinement: Military Sentences to Confinement, para. 10a (28 Feb. 1989). This regulation was not mentioned at trial, admitted into evidence, or judicially noticed. As such, the information relied upon by the military judge was clearly "extraneous." *See United States v. Turner*, 42 M.J. 783, 786–87 (N.M.Ct.Crim.App.1995).

The question remains whether the extraneous information at issue was *improperly* before the military judge. Our superior court has held that "[l]ay opinions about the possibility of parole, made as expressions of opinion or common knowledge, do not fall within the exceptions to Mil. R. Evid. 606(b)." *Straight*, 42 M.J. at 250. More recently, that same court also held that assertions by a member during deliberations that the accused "would receive substance abuse counseling if sentenced to confinement" did not involve extraneous prejudicial information. *United States v. Dugan*, 58 M.J. 253, 257 (C.A.A.F.2003). Most significantly, the Court of Military Appeals long ago observed that "military judges can best perform their sentencing duties if they are aware of the directives and policies concerning good-conduct time, parole, eligibility for parole, retraining programs, and the like." *United States v. Hannan*, 17 M.J. 115, 123–24 (C.M.A.1984).

As such, we conclude that accurate information about Army policies concerning good-conduct time is within the general and common knowledge a military judge brings to

deliberations.[1] In appellant's case, there is no competent evidence of extraneous prejudicial information that was *improperly* brought to the attention of the sentencing authority. Therefore, there is no basis for impeaching appellant's otherwise lawful and appropriate sentence.

The disclosure by the military judge in this case nevertheless bears further comment. Army trial judges have a responsibility to assist in the professional development of counsel who practice before them. One of the ways in which trial judges meet this responsibility is through the "Bridge the Gap" sessions, during which judges meet with counsel after trial and review their performance. To improve advocacy skills and promote the effective and efficient use of judicial resources, judges will often discuss with counsel specific problems of practice and procedure that arose during the trial. These discussions are an expected, and usually beneficial aspect, of the "Bridging the Gap" program. The disclosure at issue in this case apparently took place during a "Bridge the Gap" session.

■ However, the core of the deliberative process remains privileged,[2] and military judges should refrain from disclosing information during "Bridge the Gap" sessions concerning their deliberations, impressions, emotional feelings, or the mental processes used to resolve an issue before them. *See* STEPHEN A. SALTZBURG, LEE D. SCHINASI, & DAVID A. SCHLUETER, MILITARY RULES OF EVIDENCE MANUAL 721 (4th ed.1997); Mil. R. Evid. 606(b) (prohibiting testimony by members about same topics). While the deliberative privilege may be waived by voluntary disclosure of privileged information,[3] unnecessary disclosures invite appellate scrutiny. *See, e.g., United States v. Copening*, 32 M.J.

512, 514 n. 1 (A.C.M.R.1990) (urging caution during such sessions to avoid ethical lapses), *aff'd*, 34 M.J. 28 (C.M.A.1992). Furthermore, such disclosures do little to further society's considerable interest in the finality of litigation. *Cf. Tanner v. United States*, 483 U.S. 107, 120, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987) (observing that misconduct allegations raised after trial "seriously disrupt the finality of the process"). Military judges should therefore allow their findings and sentences to speak for themselves during "Bridge the Gap" sessions, and re-focus these sessions upon the conduct of counsel rather than the deliberations of the military judge.

We have considered the matters submitted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find them to be without merit.

### DECISION

The findings of guilty and the sentence are affirmed.

Senior Judge HARVEY and Judge SCHENCK concur.

---

1. We do not decide whether such information may be presented to, or considered by, members of a court-martial. *Cf. United States v. Howell*, 16 M.J. 1003, 1007 (A.C.M.R.1983) (Naughton, J., concurring) (opining it is improper for trial counsel to argue to members on sentencing, "You all know what good time is"). *But cf.* R.C.M. 1005(e)(2) (requiring sentencing instruction to members about operation of UCMJ art. 58b). Nor do we decide whether a military judge may use information concerning good-time credit in such a way as to *unduly* intrude into the

discretion of correctional officials. *Cf. United States v. Smith*, 44 M.J. 720, 725 (Army Ct.Crim. App.1996) (setting aside fine enforcement provision in sentence because unduly intrusive upon parole authorities), *sentence set aside on other grounds*, 46 M.J. 452 (C.A.A.F.1997).

2. *See* Mil. R. Evid. 509.

3. *See* Mil. R. Evid. 510(a).