UNITED STATES, Appellee

v.

Eric M. McNUTT, Private (E-2)
U.S. Army, Appellant

No. 04-0295

Crim. App. No. 20020022

United States Court of Appeals for the Armed Forces

Argued November 8, 2004

Decided September 27, 2005

GIERKE, C.J., delivered the opinion of the Court, in which
EFFRON and ERDMANN, JJ., joined. CRAWFORD and BAKER, JJ., each
filed a separate opinion, concurring in part and dissenting in
part.

Counsel

For Appellant: Captain Eric D. Noble (argued); Colonel Mark
Cremin, Lieutenant Colonel Mark Tellitocci, and Major Allyson G.
Lambert (on brief); Colonel Robert D. Teetsel and Captain Terri
J. Erisman.

For Appellee: Captain Timothy D. Litka (argued); Colonel Steven
T. Salata, Lieutenant Colonel Theresa A. Gallagher, and
Lieutenant Colonel Mark L. Johnson (on brief); Lieutenant
Colonel Margaret B. Baines.

Military Judge: Robert L. Swann

**This opinion is subject to revision before final publication.**

Chief Judge GIERKE delivered the opinion of the Court.

Following the trial of Private Eric M. McNutt, the military judge met with defense and Government counsel to critique their performance, in what is often called a "Bridging the Gap" session.[1]  During that session, the military judge voluntarily disclosed how he determined the length of Appellant's sentence. The military judge explained that he sentenced Appellant to seventy days of confinement rather than sixty days because he was aware of the correctional facilities' policy of granting five days of confinement credit per month for sentences that include less than twelve months of confinement.[2]  The United States Army Court of Criminal Appeals affirmed Appellant's sentence,[3] finding that the military judge's knowledge about the Army policy was extraneous but properly within the common knowledge of a military judge and that Military Rule of Evidence

---

[1] "Bridging the Gap" sessions, common in Army practice, are post-trial meetings intended to be used as professional and skill development for trial and defense counsel.  See United States v. Copening, 34 M.J. 28, 29 n.* (C.M.A. 1992).

[2] Therefore, we granted review of the following issue:

> Whether the military judge erred in considering the collateral administrative effect of the Army Regional Correctional Facilities' policy of granting a service member five days of confinement credit per month for sentences which include less than twelve months of confinement in adjudging Appellant's sentence.

60 M.J. 122 (C.A.A.F. 2004) (order granting review).

[3] United States v. McNutt, 59 M.J. 629 (A. Ct. Crim. App. 2003).

2

(M.R.E.) 606(b) did not provide a basis for impeaching Appellant's sentence.[4]

We hold that the military judge improperly considered the collateral administrative effect of the "good-time" policy in determining Appellant's sentence and this error prejudiced Appellant. Accordingly, the decision of Army Court of Criminal Appeals is reversed as to sentence and the case is remanded to that court to provide the appropriate relief in light of Appellant's improper confinement for ten days.

## BACKGROUND

Appellant was stationed at Fort Campbell, Kentucky. On January 8, 2001, Appellant left his unit without permission and remained absent until February 2, 2001. On February 20, 2001, Appellant again absented himself without authority and returned to his hometown of Belton, Missouri. About a month later, he surrendered to military authorities on March 19, 2001, at Fort Campbell, Kentucky. Appellant remained under military control, awaiting disposition, until he absented himself without authority a third time on April 27, 2001. He was absent until

---

[4] Accordingly, we also granted review of this issue:

> Whether the Army Court of Criminal Appeals erred in holding that there was no evidence of extraneous prejudicial information improperly brought to the attention of the sentencing authority and no basis for impeaching Appellant's sentence under Mil. R. Evid. 606(b).

60 M.J. 122 (C.A.A.F. 2004)(order granting review).

he was apprehended at his house in Belton by the County Sheriff on December 5, 2001.  Appellant was charged with one specification of desertion terminated by apprehension, and two specifications of unauthorized absence, in violation of Articles 85 and 86 of the Uniform Code of Military Justice (UCMJ).[5] Pursuant to Appellant's pleas, the military judge found him guilty and sentenced Appellant to confinement for seventy days, a bad-conduct discharge, forfeiture of $500 pay per month for three months, and reduction to pay grade E-1.

After Appellant's court-martial, Captain (Cpt) Shahan, Appellant's trial defense counsel, submitted a letter to the convening authority pursuant to Rule for Courts-Martial (R.C.M.) 1105, asserting that the military judge erred in formulating the length of confinement.[6]  In the letter, Cpt Shahan asserted that during the "Bridging the Gap" session with counsel after Appellant's sentencing, the military judge told trial counsel and defense counsel that he wanted to ensure Appellant actually

---

[5] 10 U.S.C. §§ 885, 886 (2002).
[6] See R.C.M. 1105, 1107 (convening authority must consider clemency matters submitted by accused before taking final action on sentence).

served sixty days of confinement.[7]  Cpt Shahan asked the

convening authority to "disapprov[e] 10 days of the adjudged

confinement" because the military judge had inappropriately

considered "good-time" credit when determining Appellant's

sentence.  Specifically, the defense counsel averred:

> After the guilty plea, the military judge informed the
> trial counsel, Cpt Gisela Westwater, and me, that the
> reason he sentenced Pvt McNutt to 70 days was because he
> knew Pvt McNutt would receive 10 days of "good time"
> credit, and that he wanted to be sure that Pvt McNutt
> served 60 actual days.

Further, Cpt Shahan stated that "[i]t is common knowledge in the

military justice system that the Army Regional Corrections

Facilities (RCFs) credit service members with 5 days per month

of 'good time' on sentences of 12 months or less."  Cpt Shahan

asserted that, based on United States v. McLaren,[8] it is improper

for the military judge or panel members to consider collateral

issues such as "good-time" credit.

In affirming the findings and sentence, the Army Court of

Criminal Appeals noted that Appellant could not impeach his

sentence because none of the three exceptions to the M.R.E.

---

[7] The military judge's statements made during the "Bridging the Gap" session were first asserted by Appellant in his clemency submission to the convening authority.  Appellate Government counsel did not deny that the statements were made when the case was before the Army Court of Criminal Appeals, a fact specifically noted by that court.  See McNutt, 59 M.J. at 631. And now before our Court, the unrebutted statements continue to be unchallenged by appellate Government counsel.
[8] 34 M.J. 926 (A.F.C.M.R. 1992).

606(b)[9] applied. Specifically, the lower court stated that if the military judge "improperly considered extraneous information," then prejudice towards Appellant would be presumed. The Army Court opined that because the Army regulation regarding "good-time" credit was "not mentioned at trial, admitted into evidence, or judicially noticed," the information that the military judge relied on was "extraneous."[10] However, the lower court then concluded that knowledge of the Army's "good-time" policy was within the general and common knowledge any military judge brings to deliberations.[11] Therefore, because the military judge did not rely on "improper" extraneous information, there was "no basis for impeaching [A]ppellant's otherwise lawful and appropriate sentence."[12]

---

[9] M.R.E. 606(b) prohibits a court member from testifying as to any matter or statement made during deliberations or to the effect of anything upon the member's mind, emotions, or mental processes in deciding the findings or sentence, with three exceptions. "[A] member may testify on the question whether extraneous prejudicial information was improperly brought to the attention of the members . . . , whether any outside influence was improperly brought to bear upon any member, or whether there was unlawful command influence."
[10] McNutt, 59 M.J. at 632.
[11] Id.
[12] Id. at 633.

DISCUSSION

## I. The military judge erred in considering the Army's good-time policy in assessing Appellant's sentence

In general, "'courts-martial [are] to concern themselves with the appropriateness of a particular sentence for an accused and his offense, without regard to the collateral administrative effects of the penalty under consideration.'"[13] Therefore, when military judges are asked by members about possible collateral consequences of a particular sentence, the "appropriate reply ordinarily is to reaffirm the idea that collateral consequences are not germane."[14] The reason for the preference is that "the purported effect of a collateral [consequence] cannot be used to becloud the question of an accused's guilt or innocence."[15] To ignore it "would mean that [military judges] would be required to deliver an unending catalogue of administrative information

---

[13] United States v. Griffin, 25 M.J. 423, 424 (C.M.A. 1988) (quoting United States v. Quesinberry, 12 C.M.A. 609, 612, 31 C.M.R. 195, 198 (1962)).

[14] Id. (stating that the impact of a punitive discharge on retirement benefits is a collateral consequence that should not influence the members' decision on the accused's sentence). See also United States v. Mamaluy, 10 C.M.A. 102, 106, 27 C.M.R. 176, 180 (1959) (stating that the sentences in other cases cannot be given to court-martial members for comparative purposes).

[15] Quesinberry, 12 C.M.A. at 612, 31 C.M.R. at 198 (holding that members should not be informed of the specific consequences of a bad-conduct discharge).

7

to court members. . . . [T]he waters of the military sentencing process should [not] be so muddied."[16]

Although military judges and members should not generally consider collateral consequences in assessing a sentence, this is not a "bright-line rule."[17] In certain circumstances, therefore, it may be appropriate for the military judge to instruct on collateral matters. [18] In deciding whether the military judge erred in giving such instructions, we will take a flexible approach focusing on the military judge's responsibility to give "legally correct instructions that are tailored to the facts and circumstances of the case."[19] For example, the "availability of parole and rehabilitation programs

---

[16] Id.

[17] United States v. Duncan, 53 M.J. 494, 499 (C.A.A.F. 2000).

[18] See, e.g., United States v. Boyd, 55 M.J. 217, 221 (C.A.A.F. 2001) (stating that military judges should "instruct on the impact of a punitive discharge on retirement benefits, if there is an evidentiary predicate for the instruction and a party requests it. . . . They may deny a request for such an instruction only in cases where there is no evidentiary predicate for it or the possibility of retirement is so remote as to make it irrelevant to determining an appropriate sentence."). Additionally, instructions are routinely given on the other consequences of a punitive discharge. See, e.g., United States v. Rasnick, 58 M.J. 9, 10 (C.A.A.F. 2003) (affirming the military judge's refusal to instruct the members that a punitive discharge was an "ineradicable stigma," where he "adequately advised the members that a punitive discharge was a severe punishment, that it would entail specified adverse consequences, and that it would affect Appellant's future with regard to his legal rights, economic opportunities, and social acceptability" (internal quotations omitted)).

[19] Duncan, 53 M.J. at 499 (internal quotations and citation omitted).

are issues of general knowledge and concern, and as such they may be instructed upon, especially when requested by the members."[20]  However, in such a situation, the military judge should then instruct the members that although the possibility of parole exists in the military justice system, "they could not consider it in arriving at an appropriate sentence for [the] appellant."[21]

Similarly, in this case, the general preference for prohibiting consideration of collateral consequences is applicable to the military judge's consideration of the Army "good-time" credits.[22]  Each accused deserves individualized consideration on punishment.  Thus, "proper punishment should be determined on the basis of the nature and seriousness of the offense and the character of the offender, not on many variables not susceptible of proof."[23]  In other words, sentence determinations should be based on the facts before the military judge and not on the possibility that Appellant may serve less time than he was sentenced to based on the Army's policy. Moreover, "good-time" credit is awarded as a consequence of the

---

[20] Id. at 500 (citing United States v. Greaves, 46 M.J. 133, 139 (C.A.A.F. 1997)).
[21] Id.
[22] See United States v. Howell, 16 M.J. 1003 (A.C.M.R. 1983) (Naughton, J., concurring) (finding it improper for the trial counsel to argue that the appellant would not serve the full confinement time adjudged by the members because of "good-time" credit).
[23] Mamaluy, 10 C.M.A. at 107, 27 C.M.R. at 181.

convicted servicemember's future behavior -- behavior that may or may not take place. Therefore, the possibility of "good-time" credit should not be considered by the members or the military judge when deciding what sentence is appropriate.

We agree with the lower court that, practically, the military judge could not be precluded from being aware of the Army policy because it falls within his general knowledge of the legal system. But this does not mean that he should consider it in determining Appellant's sentence. We hold that the military judge erred in considering the Army's "good-time" credit policy when he assessed Appellant's sentence.

## II. Military Rule of Evidence 606(b) does not apply to military judges

The Army Court of Criminal Appeals appropriately cautioned that "the core of the deliberative process remains privileged, and military judges should refrain from disclosing information during 'Bridg[ing] the Gap' sessions concerning their deliberations, impressions, emotional feelings, or the mental processes used to resolve an issue before them."[24] However, the Army Court affirmed Appellant's sentence by relying on M.R.E.

---

[24] McNutt, 59 M.J. at 633.

606(b) and our holding in United States v. Straight.[25] We

conclude that M.R.E. 606(b) applies to court members only and,

thus, does not apply to protect the statement of the military

judge in this case when he voluntarily disclosed that he

considered improper information in determining Appellant's

sentence.[26]

    A.   The plain meaning of M.R.E. 606(b)

The task of determining the meaning of M.R.E. 606(b) and to

whom it should apply begins with a reading of the plain language

of the rule.[27] Notably, the plain meaning of M.R.E. 606 is that

it applies to the "competency of [a] court member as [a]

witness." M.R.E. 606(b) does not include any language that

indicates it applies to a trial by military judge alone, and the

discussion following the rule does not address the issue.[28] As

---

[25] 42 M.J. 244, 250-51 (C.A.A.F. 1995)(holding that members'
statements made during deliberations about the possibility that
the accused might be paroled did not fall into one of the
exceptions to the M.R.E. 606(b) prohibition and thus, they were
not competent to impeach the accused's sentence).
[26] Our holding in this case in no way implies that the mental
deliberations of military judges are not protected or that the
decision-making processes of military judges are more open to
scrutiny than the decision-making processes of members. We hold
only that M.R.E. 606(b) is not the vehicle to protect those
mental processes of military judges.
[27] See United States v. Ron Pair Enter., 489 U.S. 235, 241 (1989)
("The task of resolving the dispute over the meaning of [a
statute] begins where all such inquiries must begin: with the
language of the statute itself . . . . [I]t is also where the
inquiry should end, for where . . . the statute's language is
plain, 'the sole function of the courts is to enforce it
according to its terms.'" (citations omitted)).
[28] See Straight, 42 M.J. at 250-51.

the Supreme Court has repeatedly emphasized, "[i]t is well established that 'when the statute's language is plain, the sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms.'"[29] "Had the drafters of the rule wanted to use broader language such as 'trier of fact' [to include judges, juries, and arbiters], they could have easily done so."[30]

Moreover, M.R.E. 605 explicitly addresses the competency of a military judge as a witness. Similar to subsection (a) of M.R.E. 606, M.R.E. 605(a) states that a military judge may not testify as a witness at a court-martial over which he is presiding. But M.R.E. 605 does not include a subsection (b) that mirrors the language in M.R.E. 606(b), which protects members' deliberations. "Given the absence of such a provision, it can be inferred that the drafters of said rule understood that there were certain extraordinary situations in which a

---

[29] Lamie v. United States Trustee, 540 U.S. 526, 534 (2004) (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000)). Principles of statutory construction are used in construing the Manual for Courts-Martial, United States. United States v. Lucas, 1 C.M.A. 19, 22, 1 C.M.R. 19, 22 (1951).

[30] Stewart v. Southeast Foods, Inc., 688 So.2d 733, 735-36 (Miss. 1996) (holding that a reading of Miss. R. Evid. 606(b), which is substantially similar to Fed. R. Evid. 606(b), indicates that the rule applies to jurors only and that Miss. R. Evid. 605 applies to judges).

judge may be called upon to explain his verdict or rulings in a subsequent proceeding."[31]

B. <u>An analysis of the precedent applying M.R.E. 606(b)</u>

In deciding that M.R.E. 606(b) does not apply to protect the voluntary disclosure of the military judge in this case, we are faced with precedent from this Court that is inconsistent with our holding.[32] We conclude that <u>Rice</u> and <u>Gonzalez</u> misconstrued the case law cited to support the holdings in those cases. Additionally, the circumstances of the cases that this Court relied on in <u>Rice</u> and <u>Gonzalez</u> are factually distinguishable from the situation in this case. To the extent that <u>Gonzalez</u> and <u>Rice</u> conflict with the holding of this case, we now overrule them.

In asserting that the appellant was attempting to "accomplish the precise inquiry into the trial judge's mind which is prohibited by Mil. R. Evid. 606,"[33] the Court in <u>Rice</u>

---

[31] <u>Id.</u> at 735.
[32] <u>See</u> United States v. Rice, 25 M.J. 35, 37-38 (C.M.A. 1987) (holding that the military judge did not impermissibly rely on extraneous prejudicial information in sentencing the accused to life imprisonment); <u>United States v. Gonzalez</u>, 42 M.J. 373, 374-75 (C.A.A.F. 1995) (per curiam) (following <u>Rice</u> to conclude that the military judge's statement concerning his deliberative processes at the accused's original sentencing could not be considered during a post-trial inquiry into the basis for the sentence he imposed).
[33] <u>Rice</u>, 25 M.J. at 38.

cited <u>Washington v. Strickland</u>,[34] and <u>Proffitt v. Wainwright</u>.[35] In <u>Washington</u>, a U.S. district court denied habeas relief due, in part, to the testimony from the state trial judge who imposed the death penalty.[36] The Fifth Circuit held that, although the lower court could properly consider the testimony of the trial judge to the extent it contains personal knowledge of historical facts or expert opinion, "the portion of [the judge's] testimony in which he explained his reasons for imposing the death sentence and his probable response to the evidence adduced at the habeas hearing is inadmissible evidence that may not be considered by the [lower] court."[37]

The Fifth Circuit based its holding on two cases. One was the Supreme Court's 1904 decision in <u>Fayerweather v. Ritch</u>,[38] where the Court held:

> [T]he testimony of the trial judge, given six years after the case had been disposed of, in respect to matters he considered and passed upon, was obviously incompetent. True, the reasoning of the court for the rule [prohibiting testimony by jurors] <u>is not wholly applicable</u>, for as the case was tried before a single judge there were not two or more minds coming by different processes to the same result. Nevertheless no testimony should be received except of open and tangible facts -- matters which are susceptible of evidence of both sides. A judgment is a solemn record. Parties have a right to rely upon it. It should not lightly be disturbed, and ought never to be

---

[34] 693 F.2d 1243, 1263 (5th Cir. 1982) (en banc), <u>rev'd on other grounds</u>, 466 U.S. 668 (1984).
[35] 685 F.2d 1227, 1255 (11th Cir. 1982).
[36] 693 F.2d 1243.
[37] <u>Id.</u> at 1263.
[38] 195 U.S. 276 (1904).

> overthrown or limited by the oral testimony of a judge or juror of what he had in mind at the time of the decision.[39]

In Fayerweather, the judge was being asked to provide testimony about his thought process years after the trial. But in the present case, the military judge volunteered his explicit statement that he based his sentence in part on collateral consequences immediately following the trial. Therefore, this is not a situation where Appellant is trying to "disturb" his trial's outcome or have it "overthrown or limited" by asking the military judge to disclose his thoughts when he determined Appellant's sentence that would otherwise never have been disclosed.[40]

The other case that the Fifth Circuit cited to support its holding in Washington is United States v. Crouch.[41] In that case, the Fifth Circuit stated that just as a court will not review the motives of a legislature in enacting a law, a "judge's statement of his mental processes is absolutely unreviewable."[42] Crouch cites the excerpt from Fayerweather quoted above and United States v. Morgan,[43] where the Supreme Court stated it could not review the mental processes of the Secretary of Agriculture in proceedings held to determine the

---

[39] Id. at 306-07 (emphasis added).
[40] Id.
[41] 566 F.2d 1311 (5th Cir. 1978).
[42] Id. at 1316.
[43] 313 U.S. 409, 422 (1941).

reasonableness of rates charged by market agencies at stockyards.  The facts of Morgan -- where the Supreme Court declined to delve into the mental processes of the Secretary of Agriculture in an attempt to determine if the rates he set were reasonable -- are clearly factually distinguishable from the situation in this case.

Fayerweather and Crouch are the same two cases that the Eleventh Circuit cited in Proffitt.[44]  In reversing the district court's denial of appellant's habeas claim in part, the Eleventh Circuit held that the lower court erred in relying on the trial judge's post-trial statements that he did not use an expert's report in determining the sentence.[45]  The court stated that "post-decision statements by a judge or juror about his mental processes in reaching [a] decision may not be used as evidence in a subsequent challenge to the decision."[46]  The situation in Proffitt is similar to the other cases that are concerned with protecting judges' mental processes from being called into question long after the end of the trial.  Their rationale does not apply where, as in this case, immediately after trial the military judge voluntarily disclosed the information he considered in making a sentence determination.

---

[44] 685 F.2d at 1255.
[45] Id.
[46] Id.

Significantly, the Supreme Court has not explicitly held that Fed. R. Evid. 606(b)[47] applies to trial judges, and the rule is cited by only one of the cases discussed above. In Washington, the Fifth Circuit cited Fed. R. Evid. 606(b) and stated that its underlying policy considerations apply equally to judges.[48] The Fifth Circuit then provided an in-depth discussion of the policy reasons why a judge's deliberative process should not be revealed.[49] Most, if not all, of the policy reasons are inapplicable to the situation in this case, thus providing further support for our holding that the military judge's voluntary disclosure in this case should not be protected by M.R.E. 606(b).

First, the Fifth Circuit stated that the testimony of the trial judge "poses special risks of inaccuracy" because it is "often given several years after the fact and a judge is unlikely to be able to reconstruct his thought processes accurately over such a span of time."[50] Second, "the finality and integrity of judgments would be threatened by a rule that enables parties to attack a judgment by probing the mental

---

[47] Fed. R. Evid. 606(b) is virtually identical to M.R.E. 606(b), except that it does not include the exception for "unlawful command influence" that is included in M.R.E. 606(b).
[48] 693 F.2d at 1263.
[49] Id. Some of these policy reasons were addressed by the Air Force Court of Military Review in United States v. Rice, 20 M.J. 764, 768 (A.F.C.M.R. 1985), aff'd, 25 M.J. 35, 37-38 (1987), when it held that M.R.E. 606(b) applies to military judges.
[50] Washington, 693 F.2d at 1263.

17

processes of a judge."[51]  Also, a "probing of the mental processes of a state judge would exacerbate certain problems that are already inherent in the habeas corpus context," such as the "tendency of the habeas proceeding to detract from the perception of the trial of a criminal case in state court as a decisive and portentous event" when a trial judge is "called into federal court several years later to recreate his thought processes at the criminal trial."[52]  Finally, the "friction between the state and federal systems of justice can hardly be alleviated by a rule that permits the parties to interrogate a state judge in federal court regarding the basis for his decision."[53]

The first and fourth reasons are clearly inapplicable to the military judge's disclosure in this case.  The first reason does not apply because the military judge explicitly stated his thought process in the "Bridging the Gap" session immediately after trial; this is not a case where the judge is being asked years afterwards to recall his thought processes.  The fourth policy reason is inapplicable because the military justice system is one system, rendering the friction between the federal and state systems irrelevant.

---

[51] Id.

[52] Id. (internal quotations and citations omitted).

[53] Id.

The second and third factors -- which we will label the "finality" factors -- arguably support the conclusion that a judge's mental processes should be protected.  But the situation in this case, where the military judge voluntarily disclosed immediately after trial that he considered collateral information in determining Appellant's sentence, is completely different from an appellant's request years after a trial to explore the deliberative process of the judge.[54]  Additionally, in this case, neither the military judge nor the Government disputes the existence of the statement concerning the military judge's basis for assessing Appellant's sentence.  Thus, this case is also distinguishable from cases where the military judge disputes he ever made the statements the appellant later claims demonstrate prejudice.[55]

In conclusion, the plain meaning of M.R.E. 606 limits its application to court members.  When read in conjunction with M.R.E. 605, it becomes even more apparent that military judges are excluded from its scope.  Moreover, to read the case law as protecting all statements made by a military judge -- such as

---

[54] See Fayerweather, 195 U.S. at 306-07.  See also Morrison v. Kimmelman, 650 F. Supp. 801, 805-07 (D.N.J. 1986) (holding that, on remand, the State could not elicit evidence from the trial judge, sitting as trier of fact, concerning how he weighed the evidence and whether, absent a specific type of evidence, he would have convicted the petitioner).
[55] See United States v. Lentz, 54 M.J. 818, 820 (N-M. Ct. Crim. App. 2001).

the one made here -- would not only further misconstrue the precedent relied upon in our decisions in <u>Rice</u> and <u>Gonzalez</u>, but would also thwart the well-settled rules against considering collateral information in assessing an accused's sentence. Therefore, we hold that the military judge erred in considering the Army's policy of "good-time" credit when assessing Appellant's sentence. Furthermore, we hold that the Army Court of Criminal Appeals erred in relying on M.R.E. 606(b) to protect the statements voluntarily disclosed by the military judge. To the extent that our decisions in <u>Rice</u> and <u>Gonzalez</u> conflict with this decision, they are overruled.

When the military judge's statements are considered, it is apparent that he lengthened Appellant's sentence by ten days for an improper reason. This error establishes prejudice under Article 59(a), UCMJ.[56] The Army Court of Criminal Appeals is best positioned to determine the appropriate remedy for Appellant being improperly confined for ten days.

DECISION

Accordingly, we affirm that portion of the lower court's decision affirming the findings. We set aside the portion of the lower court's decision affirming the sentence and remand the case to the Army Court of Criminal Appeals. That court shall perform a new Article 66(c), UCMJ, sentence appropriateness

---

[56] 10 U.S.C. § 850(a)(2000).

review in light of Appellant's improper confinement for ten days and determine an appropriate remedy.

United States v. McNutt, No. 04-0295/AR

CRAWFORD, Judge (concurring in part and dissenting in part):

"[H]ard cases, it is said, make bad law."[1]  This frequently quoted observation has served as a warning for over 300 years to judges on courts of law who would modify or reject a rule of law for the benefit of an individual cause, rather than reach a result they deem equitably unattractive.  Despite this warning, the majority rejects decades of military practice and precedent to reach the result they deem equitable –- a result that may seem fair but may also qualify as the outcome Lord Argyll warned against.

We profess to be a Nation that adheres to the rule of law. Because I believe that to be true, I prefer to follow the rule of law, even when it produces a "hard" result.  In this case, I would apply our precedent, leaving unaltered the very nature of trial by military judge alone, and affirm not only the sentence in this case, but the principles this Court and all military justice practitioners have followed since 1969.  For those reasons, I must respectfully dissent from the result and from the majority's new rules restricting consideration by military judges of collateral consequences during their deliberations on sentencing.

---

[1] Ex parte Long, 3 W.R. 18, 19 (1854).

As to the majority's return to the plain language of Military Rule of Evidence (M.R.E.) 606(b), however, I concur and applaud the majority's willingness to correct a prior instance of judicial rulemaking by this Court.

### FACTS AND FACT FINDING

If we were to disregard, for the moment, the Military Rules of Evidence, the Rules for Courts-Martial (R.C.M.), and the facts as found by the court below, the "facts" of this case would be unappealing, from the Government's standpoint. These "facts" would establish that the military judge had discussed his deliberative process in an informal setting, that he had departed from established practice to apply a service policy not formally introduced to the proceedings, and that he had increased Appellant's sentence based on that policy.

To the contrary, the record and the factual findings of the court below establish only that Appellant's trial defense counsel timely complained to the convening authority that the military judge had unfairly sentenced Appellant to an additional ten days of confinement by considering what counsel described as a well known practice of "Army Regional Corrections Facilities." The Army Court of Criminal Appeals also noted defense counsel's assertion that the military judge had made the post-trial statement and that this assertion was unrebutted by the Government. To support Appellant's claim, however, there is not

now, nor has there ever been, any competent evidence of the military judge's statement. As the court below noted, its task was to "ultimately conclude [whether] the statement is competent evidence that the military judge improperly considered extraneous information." United States v. McNutt, 59 M.J. 629, 632 (A. Ct. Crim. App. 2003). It then implicitly assumed the statement had been made for the purpose of concluding that, "there is no competent evidence of extraneous prejudicial information that was improperly brought to the attention of the sentencing authority." Id. at 633. It so concluded, in part, because the policy in question is common knowledge to military judges. As noted below, it is also one frequently and historically applied to the benefit of servicemembers who have elected to be sentenced by military judge alone.

What the court below considered arguendo, this Court now finds as fact: that the statement was made and that there was an improper consideration of collateral matters.

In United States v. Ginn,[2] we recognized both the authority and the limitations of Article 66 courts when they address issues raised in post-trial affidavits without remand for a DuBay[3] hearing on disputed factual issues. As we are not empowered by statute to make factual findings, our authority is

---

[2] 47 M.J. 236 (C.A.A.F. 1997).
[3] United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967).

certainly less and our limitations more stringent.  Nonetheless, the majority decides that this Court can award relief on the basis of an unrebutted, unsworn, post-trial factual assertion by a defense counsel to a convening authority.  Moreover, without reference to a DuBay hearing, or even a remand to the court below, the majority finds that the defense counsel's statement must be true because the military judge did not rebut that statement to the convening authority, notwithstanding the precedent of this Court suggesting that such a rebuttal would have been improper,[4] and absent any evidence that the military judge has ever been made aware of the "statement."[5]  We are not empowered by Congress to find such facts.  Consequently, even if the majority now overrules both Rice and Gonzalez[6] and concludes that M.R.E. 606(b) does not apply to military judges, unless we, like the court below, address this issue arguendo, we must remand for a DuBay hearing.

### LAW, PRECEDENT, AND PRACTICE

Trial, including sentencing, before military judge alone is different than trial before members.  In United States v. Hannan,[7] this Court not only condoned, but encouraged military

---

[4] United States v. Rice, 25 M.J. 35 (C.M.A. 1987)(applying M.R.E. 606(b) to military judges).
[5] Authentication (R.C.M. 1104) precedes submission of matters by the accused (R.C.M. 1105(c)(1)).
[6] United States v. Gonzalez, 42 M.J. 373 (C.A.A.F. 1995).
[7] 17 M.J. 115 (C.M.A. 1984).

judges to know and apply "good-time" policies during their sentencing deliberations.[8] While not central to the holding of that case, the Court clearly recognized not only the relevance of such information to military judge sentencing proceedings, but affirmed that such knowledge and application is and always has been part of the military judge's function when an accused elects "military judge alone" as the sentencing authority:

> Thus, in seeking to arrive at an appropriate sentence, Judge Wold properly took into account the rules governing parole eligibility. Indeed, military judges can best perform their sentencing duties if they are aware of the directives and policies concerning good-conduct time, parole, eligibility for parole, retraining programs, and the like.[9]

Hannan's failure to elaborate on the mechanism by which military judges are properly to consider such information is not surprising in light of the overlap created by M.R.E. 201A (Judicial Notice of Law) and the principle long embraced by this Court that military judges are presumed to know and properly apply the law.[10] If it becomes error for a military judge to apply law (including appropriate regulations) not admitted in

---

[8] See, e.g., Department of Defense (DOD) Instruction 1325.7, Administration of Military Correctional Facilities and Clemency and Parole Authority, December 17, 1999, Enclosure 26. It is highly likely that this policy is what the military judge relied on because it is a subject of instruction for all students at the Military Judges' Course of the U.S. Army Judge Advocate General's Legal Center and School.
[9] 17 M.J. at 123-24.
[10] United States v. Lewis, 12 M.J. 205 (C.M.A. 1982).

evidence and not formally noticed to the parties,[11] then what law is it that military judges will be presumed to know and properly apply?  Requiring military judges formally to notice judicially all law they consider would hopelessly burden the trial bench with identifying and announcing before each ruling or decision, all the law the judge intends to consider.

On a related issue, when an accused elects to be sentenced by military judge alone, the military judge, unlike court members, is not only permitted to be aware of and consider sentences received by similarly situated accuseds, but we have repeatedly and recently expressed our expectation that he do so:

> The experienced and professional military lawyers who find themselves appointed as trial judges . . . have a solid feel for the range of punishments typically meted out in courts-martial. . . . We have every confidence that this accumulated knowledge is an explicit or implicit factor in virtually every case in which a military judge imposes sentence. . . .[12]

That military judges may sometimes consider what court members may not is simply not news.  As one commentator has noted:

> Awareness of the collateral consequences of a court-martial sentence is yet another area where court members lag far behind the military judge.  In United States v. Griffin, the COMA affirmed the general rule that "courts-martial [are] to concern themselves with the appropriateness of a particular sentence for an

---

[11] See M.R.E. 201.

[12] United States v. Lacy, 50 M.J. 286, 288 (C.A.A.F. 1999) (quoting United States v. Ballard, 20 M.J. 282, 286 (C.M.A. 1985)).

6

accused and his offense, without regard to the
collateral administrative effects of the penalty under
consideration."  This may deprive the accused of the
opportunity to present important evidence to the
members.  For example, members may be permitted to
hear testimony about a rehabilitative program for sex
offenders at the United States Disciplinary Barracks,
but not be informed of the sentence length necessary
for the accused to be incarcerated there.  Judges, on
the other hand, are cognizant of the administrative
consequences of their sentences and are permitted to
consider this knowledge in arriving at a proper
sentence.[13]

The majority cites <u>Hannan</u>, without quotation, explanation,
or discussion, as if to dismiss by faint notice <u>Hannan</u>'s
significance, not only for its holding, but also for its obvious
value as a historical record of the way <u>military judge alone</u>
cases have been tried since the Military Justice Act of 1968.
Further ignoring the distinction between sentencing by members
and sentencing by military judge alone, the majority quotes from
our prior opinions addressing restrictions on information that
<u>court members</u> are permitted to consider.  Finally, the majority
overrules those portions of <u>Rice</u> and <u>Gonzales</u> that are
inconsistent with its opinion, but leaves untouched our

---

[13] Major J. Kevin Lovejoy, <u>Abolition of Court Member Sentencing
in the Military</u>, 142 Mil. L. Rev. 1, 48-49 (Fall 1993)(internal
citations omitted).

decisions in Hannan, Lacy, Ballard, and United States v. Duncan,[14] and many similar opinions.

Since 1969, our opinions have starkly depicted our historically different approach to sentencing by members, as opposed to sentencing by military judge alone, and that difference has been relied on by defense counsel and their clients for decades. For example, defense counsel not infrequently advise their clients to elect trial by military judge alone when the case presents a legal defense or when counsel wishes to argue law to the military judge on findings or sentence. This is particularly true when the facts alleged by the Government are repugnant and the legal distinctions fine.[15] In trials before military judge alone, military judges are not restricted to consideration of only the law presented and argued

---

[14] 53 M.J. 494 (C.A.A.F. 2000). In Duncan, we unanimously affirmed a military judge's instruction, over defense objection, based on exactly the same Department of Defense Instruction. Id. at 498-99. Further, the military judge instructed the members, apparently from his own knowledge, on the availability of "alcohol and sex offense rehabilitation programs" for the accused during his prospective incarceration. Id.

[15] "For example, the accused may elect to be tried before a military judge alone when the facts and circumstances of the case may inflame the passions of a lay jury but not of a seasoned jurist." Joseph L. Falvey Jr., United Nations Justice or Military Justice: Which is the Oxymoron? 19 Fordham Int'l L.J. 475, 506 (1995).

by counsel, any more than they are restricted in that sense while ruling on a matter of law.[16]

As noted above, the defense frequently elects trial by military judge alone when seeking a measure of predictability in sentencing.  This predictability exists, in large measure, because military judges are aware -- some to the point of maintaining meticulous tracking systems -- not only of the sentences imposed in similar cases as recorded in reported appellate law, but of the sentences they have imposed in prior cases under similar circumstances.[17]  Prohibiting military judges from considering such matters during sentence deliberations, on the grounds that such matters could not properly be considered by members, would be an enormous departure from decades of practice with potentially disastrous results, as noted below.

Just four years ago, we unanimously announced in Duncan that a military judge may answer, in instructions, the questions of court members regarding parole and treatment programs, and may do so by "draw[ing] upon a body of information that is

---

[16] This is consistent with federal practice:  "[a]ll that the procedural rules and the current trend provide is that the court itself is free to consult its own sources and to attempt to determine the appropriate law on the basis of all available statutes, decisions and other sources."  Stephen A. Saltzburg et al., Federal Rules of Evidence Manual 129 (7th ed. 1998).
[17] "We have every confidence that this accumulated knowledge is an explicit or implicit factor in virtually every case in which a military judge imposes sentence . . . ."  Lacy, 50 M.J. at 288 (quoting Ballard, 20 M.J. at 286).

reasonably available and which rationally relates to the sentencing considerations in RCM 1005(e)(5)."[18] The majority announces today that a military judge, sitting alone, may not draw on that very same "body of information," concluding without stating that such is now "extraneous prejudicial information" improperly considered by the military judge. In sum, the majority now chastises Judge Swann for considering and applying exactly the same policies that engendered our commendation of Judge Wold twenty years ago. It is this selective application, and sub silentio rejection, of our precedent that may lead our readers to question whether the majority's position is one of law or equity.

## THROWING THE BABY OUT WITH THE BATH WATER?

In what is no longer a novel approach by this Court, the desire for an equitable result in an individual case appears to have produced new rules for the conduct of courts-martial. Leaving room for exceptions to be applied as equity may require, the majority opinion is likely to be read as recognizing two "well-settled general rules": (1) military judges and court members are bound by the same rules pertaining to consideration of collateral consequences in sentencing; and (2) neither court members nor military judges may consider collateral consequences in deliberations on sentence:

---

[18] Duncan, 53 M.J. at 500.

> [T]he general preference for prohibiting consideration
> of collateral consequences is applicable to the
> military judge's consideration of the Army good-time
> credits.  Each accused deserves individualized
> consideration on punishment.  Thus, "proper punishment
> should be determined on the basis of the nature and
> seriousness of the offense and the character of the
> offender, not on many variables not susceptible of
> proof."  In other words, sentence determinations
> should be based on the facts before the military judge
> and not on the possibility that Appellant may serve
> less time than he was sentenced to based on the Army's
> policy.  Moreover, good-time credits are awarded as a
> consequence of the convicted servicemember's future
> behavior –- behavior that may or may not take place.
> Therefore, the possibility of good-time credit should
> not be considered by the members or the military judge
> when deciding what sentence is appropriate.

United States v. McNutt, 61 M.J. __, __ (9-10) (C.A.A.F. 2005)

(footnotes omitted).  There is hardly a word of the majority's

reasoning in this case that would not compel application of

these general rules to all policies on parole, "good time,"

rehabilitative programs, length-of-confinement thresholds for

assignment to the various confinement facilities, and other

collateral consequences associated with confinement.

Although the confinement at issue in this case is ten days,

the flaw in the majority's holding is most apparent when applied

to the other end of the confinement scale.  As the majority

said:

> {T]his does not mean that he should consider [the
> policy] in determining Appellant's sentence.  We hold
> that the military judge erred in considering the
> Army's "good-time" credit policy when he assessed
> Appellant's sentence.

Id. at __ (10).  The very same DOD Instruction that the majority chastises the military judge for considering is also the authority for "good time," parole, and clemency permitted in cases of life without parole, life, and terms of years.  In fact, as every military judge and every experienced defense counsel knows, service members sentenced to life earn no "good time," those sentenced to ten years or more earn ten days per month, and so on.[19]  Even if applied only to "good time," what today's opinion tells practitioners involved in trials of service members with the most to lose is that these things cannot be considered by a military judge.  "In other words, sentence determinations should be based on the facts before the military judge and not on the possibility that Appellant may serve less time than he was sentenced to based on the Army's policy."[20]  Id. at __ (9).  No longer will defense counsel be permitted to argue that their client should receive a term of years, rather than life, so that he or she can "earn" a future through "good time" and gain the hope and the motivation to lead a law-abiding life.  No longer will a military judge be able, as Judge Wold did, to consider the collateral impact that a sentence of a particular length may have.

---

[19] DOD Instruction 1325.7, Encl. 26.
[20] The majority describes the authority in question as an "Army policy," rather than a DOD Instruction, binding on all military confinement facilities.  McNutt, 61 M.J. at ___ (9).

As written, however, there seems no reason not to apply the majority's prohibitions to other, even more collateral consequences: the potential effect of sexual offender registration laws; the potential loss of professional licensure or certification; the potential loss of a security clearance, a military training program, a promotion, or an assignment; and the potential deportation of non-citizen servicemembers.[21] Any experienced practitioner would certainly question whether the majority opinion now precludes from consideration by a sentencing authority -- including military judge alone -- a vast array of collateral consequences frequently cited by defense counsel in arguments to the effect that an accused should be punished less harshly because he is being "punished by the system."

That being the case, I must question why the majority did not also overrule or modify Hannan, Becker, United States v. Greaves,[22] or United States v. Luster.[23] Many may question

---

[21] Oddly, the speculative, collateral consequence of loss of retirement benefits is not discussed by the majority, but certainly seems threatened unless saved by rule (3). See, e.g., United States v. Becker, 46 M.J. 141 (C.A.A.F. 1997).

[22] 46 M.J. 133 (C.A.A.F. 1997)(holding that military judge erred by not answering questions of members regarding effect on potential retirement benefits of BCD upon nineteen years, ten months of service).

[23] 55 M.J. 67 (C.A.A.F. 2001)(holding that military judge erred, in trial by members, by excluding evidence of potential lost retirement benefits in a case of eighteen years and three months of service).

13

whether the unspoken reason is the existence of a third general rule in the majority's decision: (3) if a collateral consequence can be of benefit to the defense case, it may be considered, even if it would otherwise violate rule (1) or (2).  It is in this fashion that the "baby of future Appellants" will be separated from the bath water; however, the "baby of the Government" winds up in a storm sewer.  Since such a rule -- if a rule of law -- could only be established by Congress or the President, one must presume that this unspoken "rule" is no more than the application of equity to avoid a "hard" result.

## CONCLUSION

The question of whether the military judge's knowledge and consideration of these collateral consequences constitutes "extraneous prejudicial information" or "extrajudicial knowledge" was answered by this Court in Hannan, 17 M.J. at 123-4:

> Indeed, military judges can best perform their sentencing duties if they are aware of the directives and policies concerning good-conduct time, parole, eligibility for parole, retraining programs, and the like.

In 1986, the now-Chief Trial Judge of the Army observed:

> In his testimony before the Advisory Committee, Colonel James G. Garner, the Chief Trial Judge of the Army, commented that it was his policy to send a judge to visit the various confinement facilities and [to] prepare a memorandum detailing what he had learned on the visit.  Each Army trial judge received a copy of the memorandum.  Expecting the trial judge to

14

> disregard this knowledge in imposing sentence is nonsensical.[24]

Before we send sentencing by military judge in the direction of the Titanic, we should heed this logic and undertake a much more thorough review of history, practice, and precedent.

---

[24] Captain Denise K. Vowell, To Determine an Appropriate Sentence: Sentencing in the Military Justice System, 114 Mil. L. Rev. 87, 180 n. 489 (1986).

BAKER, Judge (concurring in part and dissenting in part):

As the majority has correctly stated, generally "courts-martial [are] to concern themselves with the appropriateness of a particular sentence for an accused and his offense, without regard to the collateral administrative effects of the penalty under consideration." United States v. Griffin, 25 M.J. 423 (C.M.A. 1988) (quoting United States v. Quesinberry, 12 C.M.A. 609, 612, 31 C.M.R. 195, 198 (1962)). This general rule is not dependent on the sentencing forum. Such a rule promotes consistency in sentencing for like offenses and is consistent with the principle of individualized sentencing based on the charged conduct and not based on expectations of future behavior. Accordingly, I concur in this section of the majority opinion.

However, I respectfully dissent from the second section of the majority opinion addressing the application of Military Rule of Evidence (M.R.E.) 606(b) because it is unnecessary to resolve this case.

M.R.E. 606(b) states:

Upon an inquiry into the validity of the findings or sentence, a member may not testify as to any matter or statement occurring during the course of the deliberations of the members of the court-martial or, to the effect of anything upon the member's or any other member's mind or emotions as influencing the member to assent to or dissent from the findings or sentence or concerning the member's mental process in connection therewith, except that a member may testify

on the question whether extraneous prejudicial
information was improperly brought to the attention of
the members of the court-martial, whether any outside
influence was improperly brought to bear upon any
member, or whether there was unlawful command
influence. Nor may the member's affidavit or evidence
of any statement by the member concerning a matter
about which the member would be precluded from
testifying be received for these purposes.

Because this is a case where the military judge voluntarily
disclosed his thought process to counsel, M.R.E. 606(b)'s
concern with an inquiry into the confidential deliberations of
members, or of the military judge to the extent the rule were
read to apply to factfinders in general, is not implicated.
Therefore, we need not address the application of M.R.E. 606(b)
to military judges to resolve this case.  Just as we would not
need to consider the scope of the attorney-client privilege in a
case involving a voluntary attorney or client disclosure.  As a
threshold matter, we would only need to determine whether any
possible applicable privilege had been waived.  This case does
not require us to explore the possible scope and limitations of
M.R.E. 605 or 606.  Any judicial privilege that might have
applied was independently and voluntarily waived by the military
judge.